902 F.2d 28
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Roscoe JORDAN, Plaintiff-Appellee,
and
Minuteman Transit, Inc., d/b/a Tennessee Delivery Systems,
Inc.; D.V. Leasing, Inc.; C.C.S. INC., d/b/a
Baken Delivery Services, Plaintiffs,
v.
CAMPBELL-TAGGART, INC.; Merico, Inc.; Dean Burger,
Defendants-Appellants.
 No. 87-3595.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 5, 1990.
Decided April 17, 1990.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. James B. McMillan, Senior District Judge. (CA-85-419-C-C-M)
 Charles Evans Johnson, Moore & Van Allen, Charlotte, N.C., argued, for appellants; on brief.
 Leslie Jane Winner, Ferguson, Stein, Watt, Wallas, Adkins & Gresham, P.A., Charlotte, N.C., for appellees.
 James C. Smith, Moore & Van Allen, Charlotte, N.C., on brief.
 Margaret Errington, Ferguson, Stein, Watt, Wallas, Adkins & Gresham, P.A., Charlotte, N.C.; William L. Rikard, Jr., I. Faison Hicks, Parker, Poe, Thompson, Bernstein, Gage & Preston, Charlotte, N.C., for appellees.
 W.D.N.C.
 AFFIRMED IN PART; VACATED IN PART; AND REMANDED FOR MODIFICATIONS.
 Before PHILLIPS, SPROUSE and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Dean Burger and Campbell-Taggart, Inc. (hereinafter CTI) appeal the district court's judgment entered on a jury verdict awarding Roscoe Jordan compensatory and punitive damages for alleged violations of 42 U.S.C. Sec. 1981, and the North Carolina common law tort of intentional infliction of emotional distress. This case grew out of a dispute between Minuteman Transit, Inc. (hereinafter Minuteman) and CTI concerning a contract for the delivery by Minuteman of buns made by Merico, a wholly owned CTI subsidiary, to Burger King restaurants. Jordan, a Minuteman employee, was permitted to intervene in that contract action to assert against CTI and its employee, Dean Burger, Sec. 1981 and state tort claims for racial harassment. On the defendant's originally consolidated appeals from adverse judgments on both Minuteman's contract claim and Jordan's Sec. 1981 and state tort claims, we deconsolidated this appeal and held it in abeyance pending the Supreme Court's decision in Patterson v. McLean Credit Union, 491 U.S. ----, 109 S.Ct. 2363 (1989). We now affirm that part of the judgment awarding damages on Jordan's state tort claim, but vacate that part awarding damages on the Sec. 1981 claim.
 
 
 2
 * Jordan, a black Minuteman employee, was the bakery systems manager for Minuteman's Charlotte delivery operation. Dean Burger was the director of sales for Merico's (CTI's) Charlotte, North Carolina operations. Jordan's duties involved hiring and assigning truck drivers and participation in the design and implementation of delivery routes. From the inception of the CTI-Minuteman contract of carriage, Burger interfered with Minuteman's routing and dispatching of trucks, a task for which Jordan was responsible. This usurpation of Jordan's duties had a strong racial overtone. Burger routinely assumed the authority to give Jordan orders. He criticized Jordan for hiring too many black drivers. J.A. 555-56. Burger demanded that Jordan remove black drivers from certain routes, and demanded that white drivers be placed on others. J.A. 409-10, 555. Burger at one point prohibited Minuteman employees from contacting Burger King managers, thus preventing Jordan from resolving delivery problems as they arose, while at the same time demanding that Jordan alone deal with certain black store managers. Burger frequently overrode Jordan's orders to the various drivers over whom Jordan had control. Indeed, the jury found that Burger's interference with Jordan's duties was one of the proximate causes of the carriage contract's failure; Burger's assumption of direct control over MTI drivers created severe morale problems among Minuteman personnel, and rendered Jordan's job as on site manager practically impossible. J.A. 331-45.
 
 
 3
 Burger's actions did not end with direct usurpation of Jordan's duties. Burger would frequently bang on a common wall between their offices, yelling "Roscoe get in here" or "get the hell in here." J.A. 413-14. Once, when Jordan did not respond, Burger marched into Jordan's office and called him an "arrogant fucker." Burger used this same epithet in describing Jordan to others. Burger's tirades against Jordan were also decidedly racial. In response to perceived mistakes by Jordan, Burger would often angrily ask whether Jordan had fallen off the watermelon wagon. J.A. 363, 414. On one occasion, Burger told Jordan: "I never said you people couldn't do a good job. I think everybody should own at least one." J.A. 946. Sometimes, Jordan was so upset that he had to take his work home, away from Burger. The hostility, profanity, and racial slurs continued through the life of the contract. J.A. 333, 645.
 
 
 4
 CTI was aware of Burger's interference with and racial harassment of Jordan. William Felmly, Minuteman's vice president, at one point wrote a letter to Roy Delao, CTI's Manager of Corporate Transportation, identifying particular instances where Burger racially harassed Jordan and other Minuteman drivers. J.A. at 941-48. Delao showed this letter to Burger's supervisor, and to his supervisor's supervisor. J.A. 618. Burger was never disciplined and, to the very end, profaned, racially slurred, and refused to work with Jordan in a businesslike manner. J.A. 333, 738.
 
 
 5
 As indicated, a jury returned verdicts against Burger, CTI, and Merico on both Jordan's Sec. 1981 and state-law claims, awarding both compensatory and punitive damages. Following denial of their post-verdict motions, the defendants took this appeal, assigning various errors.
 
 II
 
 6
 We first address the contention that the district court erred as a matter of law in submitting Jordan's Sec. 1981 claim and entering judgment for Jordan upon it.
 
 
 7
 Jordan's original complaint, filed July 8, 1985, before this court decided Patterson v. McLean Credit Union, 805 F.2d 113 (4th Cir.1986), proceeded on a theory that workplace racial harassment was actionable as a discrete claim under Sec. 1981. Patterson v. McLean Credit Union, 491 U.S. ----, 109 S.Ct. 2363, 2372-73 (1989), has now held to the contrary.
 
 
 8
 In light of the Supreme Court's decision in Patterson, Jordan now seeks, in an effort to sustain his recovery on the Sec. 1981 claim, to have us uphold it on a refashioned theory in which racial harassment is merely an evidentiary incident rather than the gist of the claim. As we understand the theory, it runs as follows. Burger's racial harassment of Jordan proximately caused termination of the CTI-Minuteman contract of carriage. Termination of the contract of carriage proximately caused Jordan's "demotion," thereby terminating a continuing contractual relationship between Minuteman and Jordan. Wrongful termination remains actionable under Sec. 1981 after Patterson. See Patterson, 109 S.Ct. at 2377. Demotion is tantamount for this purpose to termination. The fact that Jordan's claim is not against his contractual employer, but against a third party who allegedly interfered by indirection with the employee's contract does not take it out of Sec. 1981's reach because Patterson did not undercut earlier cases recognizing such third-party claims, see, e.g., Vietnamese Fishermens' Ass'n v. Knights of the Ku Klux Klan, 518 F.Supp. 993, 1008 (S.D.Tex.1981).
 
 
 9
 Acceptance of Jordan's imaginative new theory would require this court to make more doctrinal leaps than are possible under Patterson even assuming they could have been made before that decision. We would have to accept: (1) that Patterson permits claims for race-based terminations of employment contracts; (2) that this would include demotions as the substantial equivalents of terminations; and (3) that Patterson permits Sec. 1981 claims against third persons who interfere in actionable respects with a claimant's established contractual rights with his employer as well as against his employer; and (4) that in combination this means that a claim under Sec. 1981 therefore lies against a third person whose acts of racial harassment of an employee proximately cause cancellation of his employer's contract with a fourth person which then results in the employee's "demotion."
 
 
 10
 Without addressing as separate questions (1) whether Patterson permits Sec. 1981 claims for race-based terminations of employment contracts, an open question at this point, see Lytle v. Household Mfg. Inc., 58 U.S.L.W. 4341, 4343 n. 3 (U.S. Mar. 20, 1990) (No. 88-334) (remanded for consideration of question); or (2) whether, if so, a demotion might be considered for that purpose the substantial equivalent of termination, or (3) whether, if both (1) and (2) are accepted, such a claim could lie against a third person interferer-with-contract as well as a contractual employer, we hold that, in any event, a claim that a third person's racial harassment of a claimant has caused cancellation of the claimant's employer's contract with a fourth person, which in turn has caused the claimant to suffer a "demotion" in the form of reduced work opportunities, cannot be considered a claim of violation of the right to "make and enforce" contracts under Sec. 1981 as interpreted in Patterson.
 
 
 11
 The district court therefore erred in submitting to the jury Jordan's Sec. 1981 claim, either as originally advanced or as now sought to be upheld.
 
 III
 
 12
 We turn next to Jordan's pendent state-law claim for intentional infliction of emotional distress against Burger and CTI. As to this, defendants contend in the alternative that (1) there was insufficient evidence to support any recovery on this claim against either Burger or CTI; (2) the claim should be remanded for retrial as to both liability and damages because of the necessary taint of the erroneous submission of the Sec. 1981 claim; (3) the claim should at least be remanded for retrial as to the award of punitive damages because of erroneous jury instructions. We disagree on all three contentions, which we take in turn.
 
 
 13
 * (1)
 
 
 14
 To establish a claim for intentional infliction of emotional distress in North Carolina, a claimant must show that a defendant's conduct was (1) extreme and outrageous, (2) and that it was intended to cause, or recklessly did cause, (3) severe emotional distress. See Dickens v. Puryear, 276 S.E.2d 325, 335 (N.C.1981). Under the proper circumstances, ridicule and harassment can constitute an intentional infliction of emotional distress. See Dixon v. Stuart, 354 S.E.2d 757, 759 (N.C.App.1987) (reversing trial court's dismissal for failure to state a claim of plaintiffs' intentional infliction claim arising from workplace harassment).
 
 
 15
 Assessing the evidence here in the light most favorable to Jordan, we cannot say that the trial court erred in submitting the issue of Burger's individual liability for intentional infliction of emotional distress. On the evidence in its best light, Burger's conduct clearly constituted far more than the ordinary run of insult and offense that people must expect to encounter and tolerate in workplaces. See Johnson v. Bollinger, 356 S.E.2d 378, 382 (N.C.App.1987). Reasonable jurors could have found that Burger intentionally or with reckless disregard embarked upon a relentless course of harassment, racial slurs, and usurpation of Jordan's authority such that Jordan was unable to perform his duties. Burger's conduct was clearly "extreme and outrageous" enough to allow submission of the issue to the jury.
 
 
 16
 Again assessing the evidence in the light most favorable to Jordan, the jury rationally could have found, based upon Roscoe Jordan's testimony, that he did indeed suffer emotional distress. That the evidence of emotional distress came directly from Jordan and that he never sought medical treatment is not a bar to recovery. See Dickens v. Puryear, 276 S.E.2d 325, 332 (N.C.1981). Jordan testified that he had been humiliated, that Burger's conduct had affected him, and that he felt degraded. The jury observed his demeanor and obviously credited his testimony. There was sufficient evidence to support a jury verdict against Burger individually.
 
 
 17
 (2)
 
 
 18
 There was also sufficient evidence to support the verdict against CTI.
 
 
 19
 Under North Carolina law, a principal may become liable for the torts committed by a subordinate: (1) when the subordinate's act is expressly authorized by the principal; (2) when the act is committed within the scope of employment and in furtherance of the principal's business; or (3) when the subordinate's act is ratified by the principal. See Hogan v. Forsyth Country Club Co., 340 S.E.2d 116, 121 (N.C.App.1986). Employer ratification exists if the employer had knowledge of all material facts and circumstances relative to the wrongful act, and if the employer, through words or conduct, manifests an intention to ratify the act. See id. at 122. Retention of the offending employee, failure to intervene to prevent further offensive conduct, and failure to ultimately terminate the employee after the employer has knowledge of all material facts and circumstances surrounding the wrongful conduct are sufficient to create a jury question on the issue of ratification. See id.
 
 
 20
 Here, Burger's conduct was not expressly ratified by CTI. Nevertheless, assessing the evidence in the light most favorable to Jordan, reasonable jurors could have found from the Felmly-Delao letter that CTI was aware of all material facts surrounding Burger's misconduct. Additionally, a jury reasonably could have found that CTI, in light of its awareness of Burger's misconduct, nevertheless retained Burger in its employ, declining to intervene to prevent his further offensive behavior toward Jordan.
 
 
 21
 The district court properly submitted to the jury the question whether CTI ratified Jordan's conduct and therefore whether CTI could be liable for intentional infliction of emotional distress. See Hogan, 340 S.E.2d at 122.
 
 B
 
 22
 There is no necessity to remand the state-law claim for retrial, either as to liability or damages, by reason of any taint from erroneous submission of the Sec. 1981 claim. The district court's submission of a special verdict permits us to affirm the judgment with a single modification to reflect the one prejudicial consequence of the federal claim's erroneous submission.[1]
 
 
 23
 Because the two claims arose out of the same course of conduct on the part of Burger and CTI, the evidence admitted was equally relevant on the liability issue as to each. No general taint resulted from the admission of any evidence solely relevant to liability on the federal claim.
 
 
 24
 The only other possibility of taint would be any arising from the prejudicial enhancement of damages resulting from the erroneous submission of the federal claim. Here that did occur, but the exact measure of its consequence can be determined and corrected without the necessity for remand. Issues 4 and 5 related exclusively to liability and compensatory damages on the Sec. 1981 claim of "racially discriminatory actions." The jury specifically found liability and awarded compensatory damages of $8,000 on this claim, and this worked its way into the district court's judgment awarding a total of $16,000 in damages against CTI, Merico, and Burger, "jointly and severally." Because $8,000 of this award is demonstrably based on the jury's finding of liability on the Sec. 1981 claim, that portion of the judgment must and can be modified accordingly.
 
 C
 
 25
 The district court's jury instruction on punitive damages was not prejudicially erroneous. The court's instruction permitted an award of punitive damages against both Burger and CTI in connection with the state-law claim. Appellants first contend that the instructions did not correctly define the state standard, and that in any event it misled the jury as to the basis upon which punitive damages might be awarded against CTI.
 
 
 26
 Assessed in total context, we are satisfied that the court's instructions were not prejudicially erroneous in either respect.
 
 
 27
 While the instructions did not perfectly track the commonly used state formulation, they clearly caught the gist of the state standard, requiring in plain language that a defendant's conduct must have been found "egregious," "far-out," "gross," "maliciously or wantonly done" in "callous disregard to or indifference to the rights of another person." Appellants suffered no unfair prejudice from these instructions which, as indicated, plainly conveyed the sense of the state standard. See, e.g., Shugar v. Guill, 283 S.E.2d 507, 509 (N.C.1981).
 
 
 28
 Neither did the instructions fail properly to guide the jury in its imposition of punitive damages upon CTI. CTI complains that from the instructions given, the jury could have believed it might award punitive damages against CTI on no other basis than that Burger was its employee. We disagree. From the instructions as a whole, it was abundantly clear to the jury that it could only award punitive damages against CTI on the basis of a separate determination of its liability and of its culpability to a degree warranting such an award. This was made most plain in the following portion of the instructions:
 
 
 29
 If you determine from the greater weight of the evidence that either or both of the Defendants conducted themselves in this case in an aggrievous [sic] manner or wantonly or recklessly or with wanton disregard for the Plaintiff's rights, then you may award the Plaintiff punitive damages as to that defendant.
 
 
 30
 J.A. at 780.
 
 IV
 
 31
 For the above reasons, we vacate that part of the judgment awarding compensatory damages in the sum of $16,000 against Campbell-Taggart, Inc., Merico, Inc.,[2] and Dean Burger, jointly and severally, and remand for modification of that part to award the sum of $8,000 against Campbell-Taggart, Inc., Merico, Inc., and Dean Burger, jointly and severally. We affirm those parts of the judgment awarding punitive damages of $60,000 against Campbell-Taggart, Inc., and $5,000 against Dean Burger.
 
 
 32
 AFFIRMED IN PART; VACATED IN PART; AND REMANDED FOR MODIFICATIONS
 
 
 
 [1]
 The special verdict form as submitted and returned, and the judgment entered upon the verdict read:
 Issue 1A. Did Dean Burger harass Roscoe Jordan, and interfere with his ability to perform his job, because of Jordan's race?
 ANSWER: Yes
 1B. Did Campbell-Taggart harass Roscoe Jordan, and interfere with his ability to perform his job, because of Jordan's race?
 ANSWER: Yes
 Issue 2A. Did Dean Burger intentionally or recklessly engage in extreme or outrageous conduct which caused Roscoe Jordan to suffer extreme emotional distress?
 ANSWER: Yes
 B. Did Campbell-Taggart intentionally or recklessly engage in extreme or outrageous conduct which caused Roscoe Jordan to suffer extreme emotional distress?
 ANSWER: Yes
 Issue 3. In what amount, if any, was Roscoe Jordan damaged because of defendants' wrongful conduct?
 ANSWER: $8,000
 Issue 4. (Answer this issue if you have answered either part of issue # 1 "Yes.") Were Dean Burger's racially discriminatory actions against Jordan one of the proximate causes of the termination of the contract carriage agreement between Minuteman Transit, Inc. and Campbell Taggart, Inc.?
 ANSWER: Yes
 Issue 5. In what amount, if any, was Roscoe Jordan injured by the termination of the contract carriage agreement between Minuteman Transit, Inc. and Campbell-Taggart, Inc.?
 ANSWER: $8,000
 Issue 6A. (Answer this issue if you have answered Issue # 1A or Issue # 2A "Yes.") Is Roscoe Jordan entitled to recover punitive damages from Dean Burger?
 ANSWER: Yes
 6B. If so, what amount, if any, is Roscoe Jordan entitled to recover as punitive damages from Dean Burger?
 ANSWER: $5,000
 7A. (Answer this issue if you have answered issue # 1B or issue # 2B "Yes.") Is Roscoe Jordan entitled to recover punitive damages from Campbell-Taggart, Inc.?
 ANSWER: Yes
 7B. If so, what amount, if any, is Roscoe Jordan entitled to recover as punitive damages from Campbell-Taggart, Inc.?
 ANSWER: $60,000
 Based on the jury's answers to the issues submitted, with respect to plaintiff-intervenor Roscoe Jordan, it is ORDERED, ADJUDGED and DECREED that:
 
 
 [1]
 Roscoe Jordan shall have of the defendant Campbell-Taggart, Inc., Merico, Inc., and Dean Burger, jointly and severally, $16,000;
 
 
 [2]
 Roscoe Jordan shall have and recover of defendant Campbell-Taggart, Inc. $60,000;
 
 
 [3]
 Roscoe Jordan shall have and recover od defendant Dean Burger $5,000;
 * * *
 
 
 [2]
 We note that though this portion of the judgment runs against Merico, Inc. as a party jointly and severally liable, the verdict as submitted and returned did not specifically identify Merico, Inc. as a party that might be found liable on this claim. Merico, Inc. has not challenged the judgment on this account, presumably because of its status as wholly owned subsidiary of CTI and because it has not specifically challenged the alter ego theory of its relationship to CTI