**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 10 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

STEPHANIE COLEMAN,

       Plaintiff - Appellee,

vs.

B-G MAINTENANCE MANAGEMENT
OF COLORADO, INC., a corporation
doing business in Colorado,

       Defendant - Appellant.

No. 96-1147

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 94-Z-213)

---

William C. Berger (Robert R. Miller with him on the brief), Stettner, Miller & Cohn,
P.C., Denver, Colorado, for Defendant-Appellant.

Elisa Julie Moran (John Mosby with her on the brief), Denver, Colorado, for Plaintiff-
Appellee.

---

Before SEYMOUR, Chief Judge, BRORBY and KELLY, Circuit Judges.

---

KELLY, Circuit Judge.

---

      Plaintiff Stephanie Coleman filed this action against Defendant B-G Maintenance

Management Inc. (B-G Maintenance), alleging that her employment with B-G

Maintenance was terminated because of her gender, and her gender plus her marital status, in violation of Title VII, 42 U.S.C. §§ 2000e to 2000e-17. She also claimed that her termination breached her employment contract. The case was tried to a jury, which returned a verdict in favor of Ms. Coleman on her gender-plus and contract claims, but rejected her gender claim. B-G Maintenance filed a post-trial motion for judgment as a matter of law or a new trial, which was denied. This appeal followed. Our jurisdiction arises under 28 U.S.C. § 1291. We affirm in part and reverse in part.

Background

Ms. Coleman was employed by B-G Maintenance from 1983 until her 1992 termination. B-G Maintenance had a contract with the City and County of Denver to clean Stapleton International Airport, and beginning in 1986, Ms. Coleman supervised all B-G Maintenance personnel working the second shift at Stapleton—approximately 55 to 60 employees. One of the custodians working the second shift was Milton Newborn, Ms. Coleman's common-law husband.

At trial, B-G Maintenance presented evidence suggesting the following sequence of events. In 1988, Scott Murray, who oversaw the Stapleton operations of B-G Maintenance, began receiving complaints that Mr. Newborn had been leaving during his shift. Fearing that the complaints could result in the termination of the Stapleton contract, Mr. Murray asked Ms. Coleman about Mr. Newborn, and she gave assurance that Mr.

Newborn was not leaving during his shift.

The complaints about Mr. Newborn continued, however, prompting Mr. Murray to issue Ms. Coleman a written warning regarding the issue. Finally, B-G Management personnel testified that they observed Mr. Newborn leaving the airport during his shift on two consecutive days in 1992. Mr. Murray thus concluded that Ms. Coleman's repeated assurances about Mr. Newborn had been false, and terminated her employment.

For her part, Ms. Coleman testified that Mr. Murray did not discuss with her the complaints about Mr. Newborn until the day she was terminated, and that she never received any kind of warning, written or verbal. She also contended at trial that Mr. Newborn never left the airport during his shift and that the person B-G Management eyewitnesses had seen leaving the airport was not Mr. Newborn, but someone who looked very much like him. In addition, she presented evidence that B-G Maintenance had not discharged male supervisors whose subordinate employees had left the airport during their shifts, and that none of Mr. Newborn's other supervisors, male or female, had been terminated.

On special interrogatories, the jury rejected Ms. Coleman's claim that B-G Maintenance discriminated against her because of gender, but returned a verdict in her favor on her claim that B-G Maintenance discriminated against her because of her gender plus her marital relationship. The jury also returned a verdict in Ms. Coleman's favor on her contract claim.

<u>Discussion</u>

B-G Maintenance argues that (1) the district court erroneously instructed the jury on the issue of Ms. Coleman's gender-plus claim under Title VII, and (2) the error prejudiced B-G Maintenance in defending against the breach of contract claim. We review jury instructions de novo, and must view the instructions in their entirety, deciding not whether the instruction was completely faultless, but whether the jury was misled in any way. <u>Gardetto v. Mason</u>, 100 F.3d 803, 816 (10th Cir. 1996). Reversal is warranted when a deficient jury instruction is prejudicial. <u>Fitzgerald v. Mountain States Tel. & Tel. Co.</u>, 68 F.3d 1257, 1262 (10th Cir. 1995). Thus, "[w]here a jury instruction is legally erroneous, we must reverse if the jury might have based its verdict on the erroneously given instruction." <u>City of Wichita, Kan. v. United States Gypsum Co.</u>, 72 F.3d 1491, 1495 (10th Cir. 1996).

A. Instructions on the Gender-Plus Claim

B-G Maintenance contends that the jury was erroneously instructed[1] on Ms.

---

[1] The pertinent instruction read as follows:

In order for Plaintiff, Ms. Stephanie Coleman, to establish her discrimination claim against B-G Maintenance Management of Colorado, Inc., she has the burden of proving by a preponderance of the evidence that the defendant's actions were motivated by the Plaintiff's gender or gender along with her personal relationship with Mr. Newborn.

In order for the Plaintiff, Ms. Stephanie Coleman, to recover on her

- 4 -

Coleman's gender-plus claim, because the instructions failed to instruct that gender-plus claimants must establish that they were treated differently from similarly situated members of the opposite sex. We agree.

In Phillips v. Martin Marietta Corp., 400 U.S. 542 (1971) (per curiam), the plaintiff's claim of gender discrimination was based on the fact that the employer refused to accept applications from women with pre-school-age children, but did not enforce that

> discrimination claim against Defendant B-G Maintenance Management of Colorado, Inc., the plaintiff must prove that the defendant intentionally discriminated against plaintiff, that is, plaintiff's gender or her gender along with her personal relationship must be proven to have been a motivating factor in defendant's decision to terminate plaintiff.
>
> The mere fact that Ms. Coleman is a woman and had a personal relationship with Mr. Newborn at the time she was terminated is not sufficient, in and of itself, to establish her claim under the law.
>
> In showing that Plaintiff's gender or gender along with her personal relationship were motivating factors, plaintiff is not required to prove that her gender or gender and personal relationship were the sole motivations or even the primary motivation for the defendant's decisions. The Plaintiff need only prove that her gender or her gender and personal relationship played a part in the defendant's decision even though other factors may also have motivated the Defendant.
>
> Ms. Coleman must show that Defendant, B-G Maintenance of Colorado, Inc., intentionally discriminated against her because of her gender or because of her gender along with her personal relationship. Ms. Coleman, however, is not required to produce direct evidence of intentional discrimination. Intentional discrimination may be inferred from the existence of other facts.
>
> If you find by a preponderance of the evidence that plaintiff's gender or her gender along with her personal relationship was a motivating factor in the defendant's employment decision to terminate the Plaintiff, you should find in favor of plaintiff.
>
> If you find by a preponderance of the evidence that Defendant, B-G Maintenance Management of Colorado, Inc., would have made the same employment decision to terminate Ms. Coleman even if the unlawful motive was not present, you should find in favor of defendant.

Aplt. App. at 934-35.

- 5 -

policy against men. The Supreme Court held that the "Court of Appeals . . . erred in reading [Title VII] as permitting one hiring policy for women and another for men—each having pre-school-age children." Id. at 544. The Court thus created a cause of action for "gender-plus" discrimination; that is, Title VII not only forbids discrimination against women in general, but also discrimination against subclasses of women, such as women with pre-school-age children. See, e.g., King v. Trans World Airlines, 738 F.2d 255 (8th Cir. 1984) (alleging gender-plus-child care discrimination); Inda v. United Air Lines, 565 F.2d 554 (9th Cir. 1977) (alleging gender-plus-marriage discrimination), cert. denied, 435 U.S. 1007 (1978); Sprogis v. United Air Lines, 444 F.2d 1194 (7th Cir.) (same), cert. denied, 404 U.S. 991 (1971).

To be actionable, however, gender-plus discrimination must be premised on gender. As one scholar has artfully explained, Title VII contemplates gender-plus claims because

> when one proceeds to cancel out the common characteristics of the two classes being compared ([e.g.,] married men and married women), as one would do in solving an algebraic equation, the cancelled-out element proves to be that of married status, and sex remains the only operative factor in the equation.

Lex K. Larson, Employment Discrimination § 40.04, at 40-12 (2d ed. 1996) (emphasis added). Thus, although the protected class need not include all women, the plaintiff must still prove that the subclass of women was unfavorably treated as compared to the corresponding subclass of men. See, e.g., Fisher v. Vassar College, 70 F.3d 1420, 1448

(2d Cir. 1995) (holding that plaintiff's gender-plus-child-care claim was not adequately supported by the evidence because she failed to compare the tenure experience of women who took leaves of absence for child rearing with the tenure experience of men who took similar leaves of absence); Bryant v. International Sch. Servs., 675 F.2d 562, 575 (3d Cir. 1982) ("No evidence was before the trial court to show that married males, in circumstances similar to [the married female] appellants, received better, or even different treatment."); Willingham v. Macon Tel. Publ'g Co., 507 F.2d 1084, 1089 (5th Cir. 1975) ("The practical effect of interpreting Sec. 703 [of the Civil Rights Act] to include [gender-plus] discrimination is to impose an equal protection gloss upon the statute, i.e. similarly situated individuals of either sex cannot be discriminated against vis à vis members of their own sex unless the same distinction is made with respect to those of the opposite sex.").

Thus, despite Ms. Coleman's vigorous arguments to the contrary, gender-plus plaintiffs can never be successful if there is no corresponding subclass of members of the opposite gender. Such plaintiffs cannot make the requisite showing that they were treated differently from similarly situated members of the opposite gender. Ms. Coleman suggests that Bryant indicates that gender-plus plaintiffs can compare themselves to all persons outside the corresponding subclass. Bryant does not support such a proposition; the court merely observed that because the employer's policy applied to "all persons—male and female, single and married," it was not discriminatory. 675 F.2d at

576. Similarly, Ms. Coleman claims that Fisher supports her argument, because it states that "[t]here is nothing to show how Vassar treated married men or unmarried men." 70 F.3d at 1446. Read in its proper context, however, that quote was merely an observation regarding the state of the plaintiff's evidence; just two sentences later, the court held that "[t]o establish that Vassar discriminated on the basis of sex plus marital status, plaintiff must show that married men were treated differently from married women." Id. (citing Bryant, 675 F.2d at 575).

The district court instructed the jury that in order to recover against B-G Maintenance, "[Plaintiff] has the burden of proving by a preponderance of the evidence that the defendant's actions were motivated by the Plaintiff's gender or gender along with her personal relationship with Mr. Newborn." That instruction envisions a subclass of women who had a personal relationship with Mr. Newborn (or, in other words, Ms. Coleman) for which there is no corresponding subclass of men—that is, men with a common-law marriage to Milton Newborn. Viewing the jury instructions as a whole, we also note that the phrase "Plaintiff's . . . gender along with her personal relationship with Mr. Newborn," appears many times throughout the instructions. We conclude, then, that the district court's jury instructions on Ms. Coleman's gender-plus claim constituted reversible error.

Even assuming, however, that taken as a whole the jury understood the instructions to mean that Ms. Coleman must prove that her termination was motivated by her gender

plus her marital status, the instructions were still erroneous. As discussed above, gender-plus claims are ultimately based on gender discrimination. Ms. Coleman argues that if the instructions are carefully reviewed, they do not address comparative class at all. That is precisely our point. The district court failed to instruct that Ms. Coleman must show that similarly situated men were treated differently; thus the instructions allowed the jury to award a verdict in Ms. Coleman's favor if marital status alone were the reason for her termination. Title VII prohibits employers from treating married women differently than married men, but it does not protect marital status alone. Fisher, 70 F.3d at 1447; Willett v. Emory & Henry College, 569 F.2d 212 (4th Cir. 1978) (affirming the district court's decision that plaintiff's discrimination claim was based upon marital status, and thus did not give rise to a cause of action for gender discrimination under Title VII).

The subtleties of language involved in gender-plus discrimination make it a somewhat perplexing concept to a jury. We appreciate the difficulty of explaining the concept to a jury in the formalized context of jury instructions. Nevertheless, we are concerned that the jury was not told of the significance of Ms. Coleman's relationship with Mr. Newborn in the context of the claim advanced. Because the jury, in all probability, based its verdict on the district court's erroneously given instruction, we must reverse the jury's verdict as to Ms. Coleman's gender-plus claim. See United States Gypsum Co., 72 F.3d at 1495; Fed. R. Civ. P. 61 (stating harmless error standard).

A new trial is warranted when the district court's erroneous instructions may have

misled the jury.  See, e.g., Gardetto, 100 F.3d at 818.  However, B-G Maintenance also contends that it should have been granted judgment as a matter of law under Fed. R. Civ. P. 50(b), because Ms. Coleman failed to present sufficient evidence to establish a prima facie case of gender-plus discrimination.  We agree, and hold that even if the jury instructions had been correct, Ms. Coleman failed to produce evidence on which the jury could properly return a verdict in her favor on the gender-plus claim.

Our review of the denial of a motion for judgment as a matter of law is de novo, and we construe the evidence and inferences in the light most favorable to the nonmoving party.  Furr v. Seagate Tech., 82 F.3d 980, 985 (10th Cir. 1996), cert. denied, 117 S. Ct. 684 (1997).  We must affirm the denial if there is evidence upon which the jury could properly return a verdict in the nonmovant's favor.  Harolds Stores v. Dillard Dep't Stores, 82 F.3d 1533, 1546 (10th Cir.), cert. denied, 117 S. Ct. 297 (1996).

In an indirect Title VII case, a plaintiff may prove a prima facie case of discrimination before the defendant is obligated to articulate some legitimate, nondiscriminatory reason for its treatment of the employee.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Where the case has been fully tried, however, the issue of whether the plaintiff has proved a prima facie case drops out, and we are thus left to consider whether Ms. Coleman proved her gender-plus claim at trial by showing that B-G Maintenance treated her differently than similarly situated men.  Metz v. Merrill Lynch, Pierce, Fenner & Smith, 39 F.3d 1482, 1491 (10th Cir. 1994).  We find that she did not.

Ms. Coleman put forth evidence that male supervisors were not discharged when their subordinate employees left work during their shifts. None of those supervisors, however, had any kind of personal relationship, marital or otherwise, with their subordinate employees. At most, that evidence is probative only of Ms. Coleman's gender discrimination claim, which the jury rejected. Our review of the record reveals that the jury had no evidence on which it could have concluded that B-G Maintenance treated Ms. Coleman differently from men who also were married to subordinate employees. As a consequence, the jury's award of $250,000 in emotional distress damages cannot stand. The court instructed the jury that it could award emotional distress damages on Ms. Coleman's gender claims, but did not so instruct on the contract claims.

### B. Jury Instructions on the Contract Claim

Having determined that the jury instructions on the gender-plus claim were erroneous, we must now determine whether the error prejudiced B-G Maintenance's defense of the contract claim. At trial, Ms. Coleman argued that B-G Maintenance breached both an express contract to terminate only for good cause, and an implied contract to terminate Ms. Coleman pursuant to the procedures found in the company's employee manual. The court instructed that contract liability could be premised upon either theory, and the jury returned a verdict in Ms. Coleman's favor on both, awarding $85,000 in back pay.

- 11 -

B-G Maintenance contends that since the incorrect jury instructions led the jury to conclude that B-G Maintenance had violated Title VII by terminating Ms. Coleman, the jury must have concluded that Ms. Coleman could not have been terminated for good cause. But for a single paragraph in its reply brief, however, B-G Maintenance failed to complain about the jury instruction or evidence dealing with implied contract and progressive discipline. Thus, even if the gender-plus instructions did taint the good cause instructions, the contract award may still stand based on implied contract. It is not sufficient to merely mention an issue in a reply brief. Issues not raised in the opening brief are deemed abandoned or waived. Bowdry v. United Airlines, 58 F.3d 1483, 1490 (10th Cir. 1995) (refusing to address issue raised only in plaintiffs' reply brief). Whether B-G Maintenance had good cause to fire Ms. Coleman is irrelevant to her implied contract claim, an independent basis for the award of contract damages. For example, B-G Maintenance could have had good cause to fire Ms. Coleman, and still have breached its implied contract by failing to discharge Ms. Coleman according to its rules of progressive discipline. The jury concluded in a special verdict form that B-G Maintenance breached both its express contract and its implied contract—a conclusion we find supported by the record. Since the harm caused Ms. Coleman was the same under either breach—the loss of her job and the attendant income and benefits—the damages remain the same. We thus hold that the jury's verdict on Ms. Coleman's contract claim may stand, regardless of whether the instructions on termination for good cause had been

- 12 -

tainted.  See Williams v. United States Elevator Corp., 920 F.2d 1019, 1024 (D.C. Cir. 1990) (holding that erroneous instructions on damages could not have influenced jury's negligence verdict, since the district court had employed a verdict form requiring special verdicts on the separate questions of negligence and damages); Jordan v. Campbell-Taggart, Inc., 1990 WL 51819, at *4 (4th Cir. Apr. 17, 1990) (holding that state-law claim need not be retried by reason of taint from erroneous submission of federal claim; district court's use of special verdict form permitted court to affirm judgment on state law claim).

AFFIRMED in part and REVERSED in part.