**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

JOHN STEPHEN ROUTT,

    Plaintiff - Appellant,

v.

LATANYA HOWARD; JESSICA
HARRIS; KATIE COLBERT; STEVE
BROWN; ERIC KITCH,

    Defendants - Appellees.

No. 18-5060
(D.C. No. 4:17-CV-00020-JED-JFJ)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **McKAY**, and **MORITZ**, Circuit Judges.
_____

Pro se litigant John Routt appeals the district court's order dismissing his

complaint filed under 42 U.S.C. § 1983 alleging various constitutional deprivations

during the time he was a pretrial detainee at the David L. Moss Criminal Justice

Center, which serves as the Tulsa County Jail (Jail). We exercise jurisdiction under

28 U.S.C. § 1291 and affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    BACKGROUND

Mr. Routt was booked into the Jail on August 15, 2016.  He alleged that Sergeant Howard and Detention Officer Harris used excessive force, or failed to intervene when another detention officer used excessive force.  The district court dismissed the failure-to-intervene claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6), and granted qualified immunity on the excessive-force claims.  Mr. Routt further alleged that Detention Officer Brown twice punished him without notice and a hearing by placing him in 72-hour lockdown, and that Officer Brown engaged in practices at night that caused him to lose sleep.  The district court dismissed the claims against Officer Brown under Rule 12(b)(6) for failure to state a claim.  Mr. Routt appeals these rulings.

Mr. Routt has not challenged the district court's rulings (1) dismissing his claims against the defendants in their official capacities, (2) granting his request to dismiss certain claims and to dismiss defendants Colbert and Kitch, (3) denying his request to add a new defendant, (4) tacitly dismissing his equal-protection claim based on his white ethnicity, and (5) holding his claim for prospective injunctive relief moot because he was transferred to a different state institution.  Therefore, we deem these matters abandoned or waived, and we do not consider them.  *See Coleman v. B-G Maint. Mgmt. of Colo., Inc.*, 108 F.3d 1199, 1205 (10th Cir. 1997) ("Issues not raised in the opening brief are deemed abandoned or waived.").

2

## II.   HEIGHTENED PLEADING STANDARD

Mr. Routt first contends that the district court impermissibly held his complaint to a heightened pleading standard.  He maintains that the district court should have applied the "liberal pleading standard" of *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), rather than the "facial plausibility" standard of *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  We need not consider whether these standards diverge, however, because the district court correctly liberally construed Mr. Routt's allegations.  *See* R. Vol. 1, at 67, 77.  Moreover, Mr. Routt does not explain how his complaint would state a claim under a different standard.  Thus, we perceive no error.

## III.   FAILURE TO STATE A CLAIM – STANDARDS OF REVIEW

"We review a Rule 12(b)(6) dismissal de novo."  *Nixon v. City & Cty. of Denver*, 784 F.3d 1364, 1368 (10th Cir. 2015) (internal quotation marks omitted).  In doing so, "[w]e accept all the well-pleaded allegations of the complaint as true and construe them in the light most favorable to [Mr. Routt]."  *Id.* (ellipsis and internal quotation marks omitted).  To withstand dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted).  Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient to state a claim for relief.  *Id.*

3

At the district court's direction, the Tulsa County Sheriff's Office submitted a Special Report, pursuant to *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). We, like the district court, "assess whether [Mr. Routt's] complaint alone is legally sufficient to state a claim," and do not rely on the Special Report "to refute facts specifically pled by [Mr. Routt], or to resolve factual disputes." *Swoboda v. Dubach*, 992 F.2d 286, 290 (10th Cir. 1993) (emphasis and internal quotation marks omitted).

We liberally construe Mr. Routt's pro se filings. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). We do not, however, "take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Id.* Moreover, "pro se parties [must] follow the same rules of procedure that govern other litigants." *Id.* (internal quotation marks omitted).

## IV. EXCESSIVE FORCE

Mr. Routt's excessive-force claims arose from three incidents following an altercation with a nurse on November 20, 2016. In the first, the complaint alleged that after the nurse asked him why he repeatedly filled out the same sick-call requests, Mr. Routt responded, "'Because I'm hurting[,]' and she stated[,] 'What do you want me to do?'" R. Vol. 1, at 12. According to the complaint, Mr. Routt then "got up out of the chair" and accused the nurse of denying him medical attention, so an unidentified male detention officer yelled at him and escorted him into the hallway. *Id.* There, the unidentified officer allegedly grabbed Mr. Routt's arm and slammed him into the wall two times. Mr. Routt claimed that Sergeant Howard

4

"witnessed everything [the unidentified officer] had done, or at least had to have." *Id.*

In the second incident, the complaint alleged that as Mr. Routt and the unidentified officer walked toward Sergeant Howard, the unidentified officer grabbed Mr. Routt's left arm and twisted it behind his back, while Officer Harris grabbed his right arm, and the two officers pushed Mr. Routt down the hall while he was in an awkward position. In the third incident, the complaint alleged that the unidentified officer and Officer Harris "slung [him] forward into [his] cell [thereby] hurting [his] neck, back, shoulder and throat." *Id.* at 13.

Based on these allegations, Mr. Routt asserted two excessive-force claims: (1) Officer Harris used excessive force when she grabbed his arm, pushed him down the hallway in an awkward position, and "slung" him into his cell, injuring him, and (2) Sergeant Howard failed to intervene when the unidentified male officer and Officer Harris used excessive force.[1]

Because Mr. Routt was a pretrial detainee, we apply an objective standard, which requires that he "show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). This question is to be evaluated, among other criteria, "from the perspective

---

[1] Mr. Routt also argues that Officer Harris is liable for her failure to intervene when the unidentified male officer first allegedly slammed him into the wall. But the complaint contained no facts to suggest that Officer Harris witnessed this or was even present at that time. Therefore, the complaint failed to allege a failure-to-intervene claim against Officer Harris.

of a reasonable officer on the scene," and must defer to the detention facility's policies and practices promulgated to preserve internal order, discipline, and security. *Id.*

### A. Excessive Force – Officer Harris

The complaint alleged that Officer Harris used excessive force when she and the unidentified male officer pushed Mr. Routt down the hallway to his cell where they threw him into his cell, injuring him. The district court determined that the allegations may be sufficient to state an excessive-force claim, but granted Officer Harris qualified immunity because Mr. Routt failed to cite any existing precedent that governed her alleged acts.

We first consider whether the complaint stated an excessive-force claim based on Officer Harris's alleged conduct in the hallway. We conclude that it did not. "[W]e may affirm the judgment on any ground supported by the record, so long as [Mr. Routt] had a fair opportunity to address that ground." *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1157 (10th Cir. 2015).

The complaint alleged that after the unidentified male officer grabbed Mr. Routt's left arm and twisted it behind his back, Officer Harris "came up and grabbed [his] right arm and they proceeded to push [him] in this a[w]kward position down medical hallway to the operations desk . . . ." R. Vol. 1, at 13. In response to the defendants' motion to dismiss arguing that the use of force was minimal, Mr. Routt reasserted his allegation that Officer Harris grabbed him and walked him to his cell, *see id.* at 44.

6

The claim that Officer Harris grabbed Mr. Routt's arm and pushed him awkwardly to his cell does not plausibly allege that the force Officer Harris used was objectively unreasonable under the circumstances. *See Kingsley*, 135 S. Ct. at 2473 (holding "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable"). It is not objectively unreasonable for a jail officer to hold a detainee's arm and push him, even awkwardly, through a jail hallway.

We turn to the district court's grant of qualified immunity on Mr. Routt's claim that Officer Harris used excessive force when she "slung' him into his cell, injuring him. "We review de novo the grant of a motion to dismiss under Rule 12(b)(6) due to qualified immunity." *Doe v. Woodard*, 912 F.3d 1278, 1288 (10th Cir. 2019). Qualified immunity "shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law." *Henderson v. Glanz*, 813 F.3d 938, 951 (10th Cir. 2015) (ellipsis and internal quotation marks omitted). Therefore, "[t]o survive a motion to dismiss based on qualified immunity, the plaintiff must allege sufficient facts that show—when taken as true—the defendant plausibly violated his constitutional rights, which were clearly established at the time of violation." *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012).

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff

7

maintains." *Henderson*, 813 F.3d at 951 (internal quotation marks omitted).  The

Supreme Court has instructed "courts not to define clearly established law at a high

level of generality." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (ellipsis and

internal quotation marks omitted).  Rather, "[t]he dispositive question is whether the

violative nature of *particular* conduct is clearly established.  This inquiry must be

undertaken in light of the specific context of the case, not as a broad general

proposition." *Id.* (citation and internal quotation marks omitted).

Taking as true the allegation of slinging Mr. Routt into his cell causing injury,

Mr. Routt has failed to provide any precedent that "squarely governs" these alleged

facts.  *See id.* at 310 (evaluating whether law was clearly established, stating "none of

our precedents 'squarely governs' the facts here").  Mr. Routt cites two cases in

support of his argument that the law was clearly established.  *See Jones v. Buchanan*,

325 F.3d 520, 530 (4th Cir. 2003) (holding "mere use of foul language, even a

drunk's loud use of such language in a police station, does not justify an objectively

reasonable police officer knocking the drunk down, jumping on him, and breaking his

nose"); *Harris v. Adams*, 410 F. Supp. 2d 707, 710, 715 (S.D. Ohio 2005) (denying

qualified immunity to guard who threatened detainee, screamed at him, grabbed him

and ordered him to turn around and put his hands against the wall, pushed him

towards a cell, and shoved him into the cell causing him to fall to his knees on the

concrete floor).  These two cases from other jurisdictions do not qualify as clearly

established weight of authority from other courts.  And although Mr. Routt argues

that "the force used was used maliciously and sadistically," Aplt. Opening Br. at 11,

such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient to state a claim for relief, *Iqbal*, 556 U.S. at 678. Therefore, we affirm the grant of qualified immunity to Officer Harris.

## B. Failure to Intervene – Sergeant Howard

"[A] law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983." *Estate of Booker v. Gomez*, 745 F.3d 405, 422 (10th Cir. 2014) (internal quotation marks omitted). As to the first incident in which the unidentified male officer allegedly grabbed Mr. Routt's arm and slammed him into the wall two times, the claim that Sergeant Howard "witnessed everything . . . or at least had to have," R. Vol. 1, at 12, is too speculative to "nudge[] [his] claim[] across the line from conceivable to plausible," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

We turn to the second incident. The complaint asserted that Mr. Routt came up the hallway to talk to Sergeant Howard and the unidentified officer grabbed his left arm, twisted it behind his back in an awkward position, and placed force on his hand and wrist. According to the complaint, Officer Harris then grabbed his other arm and together the officers pushed him down the hallway in an awkward position. In his response to the defendants' motion to dismiss arguing that the force was minimal, Mr. Routt again described the facts essentially as stated above. Construed liberally, these claims alleged that Sergeant Howard failed to intervene when the two officers escorted Mr. Routt to his cell.

9

We held above that the complaint failed to allege excessive force by Officer Harris during the second incident. We conclude that the allegations also do not describe an objectively unreasonable use of force by the unidentified officer during that incident. *See Kingsley*, 135 S. Ct. at 2473 (holding "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable"). Therefore, because the complaint failed to state a claim that the officers used excessive force during the second incident, it also did not state a claim that Sergeant Howard failed to intervene to prevent another law enforcement official's use of excessive force. We affirm the dismissal of the failure-to-intervene claim based on the second incident, albeit for reasons different than those stated by the district court. *See Nakkhumpun*, 782 F.3d at 1157 ("[W]e may affirm the judgment on any ground supported by the record, so long as [Mr. Routt] had a fair opportunity to address that ground."). Finally, because the complaint did not allege that Sergeant Howard witnessed the officers place Mr. Routt into his cell, it did not state a claim for failure to intervene based on the third incident.[2]

---

[2] Mr. Routt filed a motion to produce a video of the November 20, 2016, hallway incidents. The district court denied the motion as moot after granting the defendants' motion to dismiss. Mr. Routt contends the video would show that Mr. Routt was not resisting and there were "a lot of lies told in the reports." Aplt. Opening Br. at 4 & n.1. We affirm the district court's ruling. Our determination is based on the complaint, not on any claims by the defendants that Mr. Routt was resisting. *See Summum v. Callaghan*, 130 F.3d 906, 913 n.9 (10th Cir. 1997) (denying motion to file a video as part of the appellate record on review of a dismissal for failure to state a claim, stating "our review is confined to allegations made in the amended complaint").

## V. LOCKDOWN AND NIGHTTIME NOISE

Mr. Routt asserted three claims against Detention Officer Brown, alleging that Officer Brown violated his Fourteenth Amendment due process rights by twice placing him in 72-hour lockdown without notice and a hearing, and by making noise during the night shift. Mr. Routt, a pretrial detainee, "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). The government, however, may subject pretrial detainees "to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Id.* at 536-37. Accordingly, the court "must ask whether an expressed intent to punish on the part of detention facility officials exists. If so, liability may attach. If not, a plaintiff may still prove unconstitutional punishment by showing that the restriction [or condition] in question bears no reasonable relationship to any legitimate governmental objective." *Blackmon v. Sutton*, 734 F.3d 1237, 1241 (10th Cir. 2013) (citation and internal quotation marks omitted).

"Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." *Bell*, 441 U.S. at 540. Thus, "the effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions

11

are intended as punishment." *Id.* These decisions "are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Id.* n.23 (internal quotation marks omitted).

### A. "Blanket Punishment"

Mr. Routt alleged that Officer Brown "blanket punished" him on September 27, 2016, when he locked down the entire unit for 72 hours after Jail personnel found a sharpened toothbrush in a communal shower. He contends that the lockdown was impermissible punishment and that an intent to punish was demonstrated by the facts that once the item was found, there was no longer a threat, and the item was found when all detainees were locked in their cells for the night.

We agree with the district court that Mr. Routt's allegations, accepted as true, "support a reasonable, non-exaggerated response to [the Jail's] legitimate interest in maintaining security and order." R. Vol. 1, at 77. Therefore, we affirm the district court's holding that the complaint failed to state a plausible claim that Officer Brown violated Mr. Routt's Fourteenth Amendment due process rights.

### B. "Hindering" Violation

Mr. Routt also asserted that a second 72-hour lockdown Officer Brown imposed on December 15, 2016, without notice and a hearing, was arbitrary and capricious punishment. The lockdown was for hindering a detention officer in the

12

course of his duties. Officer Brown issued the violation after Mr. Routt argued with him and took food off another detainee's tray.[3]

Relying on the Jail Incident Report, Mr. Routt argues that the lockdown was "an expressed intent to punish." Aplt. Opening Br. at 15 (citing R. Vol. 2, at 521-22 (December 15, 2016, incident report attached to Special Report)). But the incident report merely describes the occurrence; it does not include any evidence of intent. Mr. Routt points to no evidence, let alone substantial evidence, that Officer Brown exaggerated his response to the incident; thus, we defer to the Jail personnel's expert judgment. *See Bell*, 441 U.S. at 540 & n.23. Moreover, Officer Brown's response was reasonably related to the Jail's interest in maintaining security and the effective management of the Jail. *See id.* at 540. Therefore, we affirm the dismissal of this claim.

**C. Nighttime Noise**

For his final claim against Officer Brown, Mr. Routt alleged that during the night shift from 12:00 am to 8:00 am, Officer Brown "yells in the cells during his first count," "pounds on the glass with his keys [as] loud as he can on purpose," "yells across the pod at the trustees[,] and talks throughout his shift[,] making it hard to sleep." R. Vol. 1, at 13. The district court dismissed for failure to state a claim.

---

[3] The Special Report also stated that Mr. Routt called Officer Brown a racist, which Mr. Routt disputed. The veracity of this point does not affect our resolution of this claim.

13

Mr. Routt argues that the district court erred in applying Eighth Amendment standards. He maintains that the proper inquiry is whether Officer Brown's actions were punishment, and because those actions were not related to a legitimate goal, their purpose was to cause mental anguish and suffering. The district court correctly acknowledged that the Due Process Clause governs Mr. Routt's claims as a pretrial detainee, and further, that "the Eighth Amendment standard provides the benchmark for such claims." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998).

The Due Process Clause of the Fourteenth Amendment requires that a pretrial detainee be provided "humane conditions of confinement by ensuring the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee his safety." *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1188 (10th Cir. 2003) (ellipsis, brackets, and internal quotation marks omitted). To establish a jail official's liability for violating his right to humane conditions of confinement, Mr. Routt was required to show: "(1) the official[] knew of and disregarded an excessive risk to his health and safety, and (2) the alleged deprivation was sufficiently serious." *Id.* (citation, brackets, and internal quotation marks omitted). Even so, "jail conditions may be restrictive and even harsh without violating constitutional rights." *Id.* (internal quotation marks omitted).

Reviewing the district court's rulings de novo under the applicable Fourteenth Amendment standards, we affirm. First, Mr. Routt did not allege long-term exposure to the noisy nighttime conditions. "An important factor in determining whether conditions of confinement meet constitutional standards is the length of the

14

incarceration." *Barney v. Pulsipher*, 143 F.3d 1299, 1311 (10th Cir. 1998).  Second, Mr. Routt's claim that the noise made "it hard to sleep," R. Vol. 1, at 13, failed to allege a sufficiently serious deprivation.

In his appellate brief, Mr. Routt claims he was unable to sleep for five nights a week for more than seven months.  Aplt. Opening Br. at 21.  But he does not identify where he raised this claim in the district court and he does not argue for the application of plain-error review on appeal.  Therefore, this claim is forfeited. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130-31 (10th Cir. 2011). We affirm the dismissal of the claims against Officer Brown.

## VI.    CONCLUSION

We affirm the district court's judgment.

Entered for the Court


Monroe G. McKay
Circuit Judge

15