UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

STUART VANDERHURST,

         Plaintiff-Appellee,

v.

COLORADO MOUNTAIN COLLEGE
DISTRICT, a Colorado junior college
district; COLORADO MOUNTAIN
COLLEGE BOARD OF TRUSTEES, a
Colorado junior college board of
trustees,

         Defendants-Appellants.

No. 98-1408

ORDER
Filed May 9, 2000

Before **BRISCOE, REAVLEY**[*]**,** and **MURPHY,** Circuit Judges.

    This matter is before the court on appellants' petition for rehearing with

suggestion for rehearing en banc. The panel grants in part rehearing for the

narrow purpose of adding footnote 6. Accordingly, a revised published opinion is

attached to this order. The panel otherwise denies the petition.

---

[*]Honorable Thomas M. Reavley, Senior Judge, United States Court of
Appeals for the Fifth Circuit, sitting by designation.

The suggestion for rehearing en banc was transmitted to all of the judges of the court who are in regular active service as required by Fed. R. App. P. 35. As no member of the panel and no judge in regular active service on the court requested that the court be polled, the suggestion is denied.

Entered for the Court
PATRICK FISHER, Clerk of Court

By:
Keith Nelson
Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 9 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

STUART VANDERHURST,

       Plaintiff-Appellee,

v.

COLORADO MOUNTAIN COLLEGE
DISTRICT, a Colorado junior college
district; COLORADO MOUNTAIN
COLLEGE BOARD OF TRUSTEES, a
Colorado junior college board of
trustees,

       Defendants-Appellants.

No. 98-1408

---

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 97-B-563)

---

John G. Roberts, Jr., of Hogan & Hartson L.L.P, Washington, D.C. (Alexander E.
Dreier, Hogan & Hartson L.L.P.; Daniel R. Satriana, Jr., of Hall & Evans, L.L.C.,
Denver, Colorado, with him on the briefs) for Appellants.

Bradley C. Bartels, Colorado Education Association, Denver, Colorado, (Martha
R. Houser, Gregory J. Lawler, Sharyn E. Dreyer, and Cathy L. Cooper, Colorado
Education Association, with him on the brief) for Appellees.

---

Before **BRISCOE**, **REAVLEY**[*], and **MURPHY**, Circuit Judges.

**MURPHY**, Circuit Judge.

## I.  INTRODUCTION

Stuart R. Vanderhurst, a former professor at Colorado Mountain College Junior College District (the "College"), sued the College for terminating his employment on the basis of allegedly inappropriate classroom conduct and comments.  Vanderhurst claimed, *inter alia*, that the College violated his First Amendment right to free speech and breached his employment contract and he sought relief respectively under 42 U.S.C. § 1983 and state common law.  At the close of Vanderhurst's case-in-chief and again at the close of all the evidence, the College unsuccessfully moved for judgment as a matter of law on both the First Amendment and contract claims.  The jury eventually returned a verdict in favor of Vanderhurst on both claims.  The College now appeals from the district court's denial of its Rule 50 motions on the two claims.  This court exercises jurisdiction pursuant to 28 U.S.C. § 1291.

The College's appeal on the First Amendment claim presents the following issues: (1) whether the speech for which Vanderhurst was terminated garnered constitutional protection; (2) whether the district court erred by submitting to the

[*]Honorable Thomas M. Reavley, Senior Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation.

jury the question whether the termination reasonably related to the College's legitimate pedagogical concerns; and (3) whether the district court should have answered that question in favor of the College. Because the College failed to adequately raise these issues before the district court, it has waived appellate review of its arguments. This court thus **affirms** the judgment on the First Amendment claim. On the contract claim, the College contends the terms of Vanderhurst's employment contract and its Policy Manual preclude his ability to prosecute that claim in court. In light of our resolution of the First Amendment claim and the structure of the district court judgment, this court need not address the merits of that argument. We therefore **affirm** the judgment of the district court.

## II. BACKGROUND

In 1973, Vanderhurst began working as Veterinary Head of the College's Veterinary Technology Program (the "Program"), becoming Program Director in 1978. After a one year leave of absence, Vanderhurst returned to the program as a professor, teaching clinical pathology, anaesthetic nursing, radiology, and veterinary medical nursing, and further serving as a clinician to the program's animals.

In the late 1980's, an internal conflict arose among faculty within the Program. An adversarial relationship also developed between Vanderhurst and the College administration. In 1991, the College suspended Vanderhurst during a portion of the fall semester because he sexually harassed students and a female faculty member in the Program.

In the fall semester of 1995, a number of students in Vanderhurst's Clinical Pathology and Anaesthetic Nursing classes complained that he utilized an inappropriate teaching style and made offensive comments during class time. Specifically, the students lodged the following allegations against Vanderhurst: he discussed the presence of tampons in a sewer plant while lecturing about animal parasites; he referred to human anal and oral sex and male orgasms during a lecture about the transmission of parasites; he used the terms "big dog," "big chair," and "floaters and sinkers" to describe feces; he made comments insulting to blondes; he called a female student "rose bud"; he degraded a student by discussing an incident in which she was bitten by a pig; he intimated that students were "dumb"; he inappropriately referred to comments made in student evaluations; he made negative comments about another instructor in the Program and withheld class lecture material from her; he discussed matters unrelated to course content during class time; he intimidated and humiliated students; and he

allowed sophomore students to address his freshman Clinical Pathology class about their course evaluations.

The College allegedly believed that this purported conduct violated policies set forth in the College's Policy Manual, including policies governing ethics, commitment to the student, commitment to the public, and sexual harassment. As a consequence, the College notified Vanderhurst on December 14, 1995 that it was considering terminating his employment for neglect of duty, failure to meet or comply with reasonable written or published standards or directives, and other good and just cause. Vanderhurst was then suspended without pay while the College proceeded to carry out the recommended dismissal.

The Policy Manual provides that a faculty member may challenge the College's decision to terminate employment through four distinct levels of grievance review. Level I allows the grievant to meet with his immediate supervisor in an attempt to resolve the matter informally. If the grievance is not resolved at Level I, the faculty member may initiate a Level II review, at which a Peer Review Committee ("PRC") examines the entire record and may receive other relevant materials and take testimony from parties and witnesses. The PRC then issues a report which includes findings of fact, conclusions, and recommendations. If still unsatisfied, the faculty member may pursue a Level III review by the College President or designee, who reviews the record from the

prior proceedings, meets with the grievant, and may undertake additional inquiries. The President or designee then issues a written decision. Although normal grievances end with the Level III decision, a faculty member challenging a dismissal decision is entitled to a Level IV review by the Board of Trustees (the "Board"). Both the faculty member and the President or designee may testify, call and cross-examine witnesses, and present evidence at the Level IV hearing. Based on that hearing, the record from the prior hearings, and all other relevant records, the Board then issues its written decision.

On February 14, 1996, at a Level I Supervisor Review hearing, Vanderhurst grieved the College's decision to dismiss him, but the decision was upheld. Vanderhurst then pursued a Level II Peer Review grievance hearing. After conducting extensive evidentiary hearings, the PRC issued its decision on May 27, 1996. In its findings of fact, the PRC stated that the only meritorious allegation of misconduct was the one claiming Vanderhurst had allowed sophomore students to address his class about course evaluations. The PRC thus recommended that Vanderhurst not be terminated because the College had failed to show a violation of policies or other good and just cause for dismissal. In July, however, Vanderhurst was informed that the College disagreed with the PRC's recommendation and would proceed with the termination.

Vanderhurst continued to challenge the College's dismissal decision at a Level III grievance hearing. The President's designee reviewed the evidentiary record from the PRC Hearing and issued independent factual findings based on that review, some of which were inconsistent with those made by the PRC. The designee concluded that Vanderhurst had violated College policies, retaliated against another faculty member whose previous complaints had led to the 1991 disciplinary action, and disregarded earlier warnings about his offensive conduct and language. Consequently, the President upheld the decision to terminate Vanderhurst's employment. After a final Level IV grievance review, the Board unanimously approved a resolution affirming the termination.

Vanderhurst then brought suit in state court against the College, the Board, and several College administrators in their individual capacities. The College removed the case to federal district court. Vanderhurst's complaint alleged, *inter alia*, that the College had breached his employment contract by terminating his employment without proper grounds and had deprived him of his rights to free speech and academic freedom by dismissing him for exercise of those rights, thus violating the First and Fourteenth Amendments and 42 U.S.C. § 1983.

These two claims proceeded to trial in September of 1998. At the close of Vanderhurst's case-in-chief, the College moved for judgment as a matter of law on both the First Amendment and breach of contract claims, pursuant to Rule 50

of the Federal Rules of Civil Procedure. The district court denied the motion on both claims. The College renewed its Rule 50 motion on both claims at the close of all the evidence, but the district court again denied that motion.

The jury subsequently returned a verdict in favor of Vanderhurst on both claims. Although the jury specifically found that Vanderhurst had sustained damages of $557,100 on each claim, the parties had stipulated that Vanderhurst could only recover once. The district court thus awarded Vanderhurst $557,100 in total damages. The district court also ordered that Vanderhurst receive attorney's fees for his First Amendment claim upon filing an appropriate motion. The College now appeals from the district court's denial of its Rule 50 motions on both the First Amendment and contract claims.

## III. DISCUSSION

### A. Standard of Review

This court reviews *de novo* the denial of a motion for judgment as a matter of law. *See Kinser v. Gehl Co.*, 184 F.3d 1259, 1267 (10th Cir. 1999). A court should grant a defendant judgment as a matter of law "[i]f there is no legally sufficient evidentiary basis . . . with respect to [the plaintiff's] claim . . . under the controlling law." *Baty v. Willamette Indus., Inc.*, 172 F.3d 1232, 1241 (10th Cir. 1999) (quotation omitted). In evaluating a Rule 50 motion, this court

examines all the evidence admitted at trial, construing that evidence and the inferences therefrom in the light most favorable to the non-moving party. *See Kinser*, 184 F.3d at 1267.

B.  The First Amendment Claim

The College challenges the denial of its Rule 50 motions regarding Vanderhurst's First Amendment claim on three grounds: (1) the district court should have ruled as a matter of law that the speech for which Vanderhurst was terminated fell entirely outside the First Amendment's protection; (2) the district court committed reversible error by submitting to the jury a question of law–whether Vanderhurst's termination reasonably related to the College's legitimate pedagogical concerns; and (3) the district court should have answered that question in favor of the College.

*1.  Whether Speech Was Protected Under First Amendment*

The College contends that the district court should have granted its Rule 50 motions on the First Amendment claim because the speech for which it terminated Vanderhurst is entirely unprotected under the First Amendment.  The College first argues that much of Vanderhurst's speech constituted profanity, which a college professor has no First Amendment right to utter in the classroom.  Additionally, the College asserts that the speech at issue concerned course content at odds with

the College's established curriculum, and a teacher enjoys no First Amendment right to determine the educational content of a course.

In *Keyishian v. Board of Regents*, the United States Supreme Court held that a New York statute which required the termination of teachers for "treasonable" or "seditious" acts or utterances committed or made inside or outside the classroom ran afoul of teachers' First Amendment rights. 385 U.S. 589, 597, 604 (1967). The Court thus recognized that teachers do enjoy some First Amendment protection in their classroom speech, stating, "[Academic] freedom is therefore a special concern of the First Amendment, which does not tolerate laws that cast a pall of orthodoxy over the classroom." *Id.* at 603. Two years later, in *Tinker v. Des Moines Independent Community School District*, the Court delivered its now-famous pronouncement regarding speech in our nation's public schools: "It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." 393 U.S. 503, 506 (1969).

Indeed, it is widely recognized that teachers' classroom speech is entitled to some First Amendment protection. *See, e.g.*, *Blum v. Schlegel*, 18 F.3d 1005, 1012 (2d Cir. 1994); *Ward v. Hickey*, 996 F.2d 448, 452 (1st Cir. 1993); *Fowler v. Board of Educ.*, 819 F.2d 657, 661 (6th Cir. 1987); *Kingsville Indep. Sch. Dist. v. Cooper*, 611 F.2d 1109, 1113 (5th Cir. 1980). In *Miles v. Denver Public Schools*,

however, this court implicitly acknowledged that not every word spoken by a teacher in a public school classroom falls within the protections of the First Amendment. *See* 944 F.2d 773, 775 (10th Cir. 1991). The *Miles* court noted that whether a teacher's speech is constitutionally protected is the first inquiry in the test "for determining whether an adverse employment decision violates a public [school teacher's] first amendment rights."[1] *Id.*

The College maintains that because Vanderhurst's speech was profane and because it amounted to an attempt to communicate course content at odds with the College's chosen curriculum, his speech was not constitutionally protected. It thus asserts that this court can rule in its favor without even engaging in the First Amendment analysis established in *Hazelwood School District v. Kuhlmeier*, which probes whether the adverse employment action reasonably related to the school's legitimate pedagogical interests. *See* 484 U.S. 260, 273 (1988). This suggested approach, however, ignores the analytical dictate of *Miles*. In *Miles*, this court stated, "In determining whether Miles has satisfied the initial burden of

_____

[1] Under *Miles*, the second question in the test for determining if a school's adverse employment action against a teacher violated the teacher's First Amendment rights is whether "the protected speech motivated the adverse employment action." *Miles v. Denver Public Sch.*, 944 F.2d 773, 775 (10th Cir. 1991). The employee bears the burden of demonstrating both of these elements. *See id.* If the employee satisfies that burden on both elements, the employer must then establish by a preponderance of the evidence that it would have taken the adverse employment action even if the employee had not made the controversial statements. *See id.*

-11-

showing his classroom expression is constitutionally protected, we look to the Supreme Court's decision in . . . *Kuhlmeier* . . . ." *Miles*, 944 F.2d at 775. The *Miles* court then proceeded to determine whether, under the test established in *Kuhlmeier*, the actions taken against Miles reasonably related to a legitimate pedagogical interest. *See id.* at 775-79. Concluding that the school's actions against Miles were reasonably related to legitimate pedagogical interests, this court finally stated, "Miles has [thus] not shown that his classroom comments . . . were constitutionally protected." *Id.* at 779.

The College is therefore incorrect to bifurcate as separate arguments (1) that Vanderhurst's speech was not constitutionally protected, and (2) that his termination was reasonably related to the College's legitimate pedagogical concerns. Under the analytical rubric of *Miles*, the College's two separate contentions address the same issue; in other words, whether Vanderhurst's termination reasonably related to the College's legitimate pedagogical interests is the test for determining whether his speech fell within the ambit of First Amendment protection. *Cf. Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 23 (1st Cir. 1999) (utilizing the *Kuhlmeier* test to determine whether a high school teacher's distribution of lewd materials to a student were protected by the First Amendment). *But see Edwards v. California Univ. of Pa.*, 156 F.3d 488, 491 (3d Cir. 1998) ("We do not find it necessary to determine whether the district court's

instruction adequately defined 'reasonably related to a legitimate educational interest' standard because, *as a threshold matter*, we conclude that a public university professor does not have a First Amendment right to decide what will be taught in the classroom." (emphasis added)).

### 2. Whether Termination Reasonably Related to Legitimate Pedagogical Concerns

In *Kuhlmeier*, the Supreme Court established an analytical framework for determining when a public high school's restrictions on school-sponsored student speech violates those students' First Amendment rights: "educators do not offend the First Amendment by exercising . . . control over . . . student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns." 484 U.S. at 273. This court in *Miles* extended that holding to a school's control over the classroom speech of a public high school teacher. *See* 944 F.2d at 777. This court has not decided, however, whether that same analytical approach should be applied to a college or university's ability to restrict the classroom speech of a professor. On appeal, both Vanderhurst and the College embrace the *Kuhlmeier* approach as the proper means to analyze Vanderhurst's First Amendment claim. This court will thus assume for purposes of this appeal that the analytical framework established in *Kuhlmeier* is indeed appropriate to this case; we need not decide definitively,

however, whether that framework does in fact govern a public college or university's control over the classroom speech of a professor or other instructor.[2]

In the instant case, the district court ruled as a matter of law that the interests embodied in the College's sexual harassment policy and code of ethics and stated as the reasons for terminating Vanderhurst did constitute legitimate pedagogical concerns. Additionally, the district court determined that neither the sexual harassment policy nor the code of ethics are unconstitutionally vague. Finally, in granting the College's Rule 50 motion on Vanderhurst's equal protection claim, the district court ruled as a matter of law that the College did not act in a discriminatory or vindictive manner in firing Vanderhurst. Given these three rulings, the College contends that the district court was required to rule as a matter of law that the termination was reasonably related to legitimate pedagogical interests. Specifically, the College first asserts that whether the termination reasonably related to legitimate pedagogical interests is a question of law which the district court erroneously submitted to the jury. The College then

_____

[2] Not all courts have adopted the *Kuhlmeier* framework as the proper means to assess a college or university's restriction of in-class speech by an instructor. *See, e.g., Bishop v. Aronov*, 926 F.2d 1066, 1074-76 (11th Cir. 1991) (utilizing a unique balancing test); *Scallett v. Rosenblum*, 911 F. Supp. 999, 1011 (W.D.Va. 1990) (applying the *Pickering* balancing test to a university's control over an instructor's speech, rather than the *Kuhlmeier* test, because the interests discussed in *Kuhlmeier* justifying allowance of greater speech restriction in secondary schools are not at stake to the same degree in higher education).

maintains that had the district court made this determination, instead of allowing the jury to do so, the court should have ruled in its favor. Vanderhurst counters that the College waived its right to press these two related arguments on appeal because it failed to articulate them in its Rule 50 motions.

This court generally will not entertain arguments on appeal which the appellant failed to raise before the district court. *See Crow v. Shalala*, 40 F.3d 323, 324 (10th Cir. 1994). More specifically, "[a Rule 50] motion for judgment as a matter of law made at the close of all the evidence preserves for review only those grounds specified at the time, and no others." *Correa v. Hospital San Francisco*, 69 F.3d 1184, 1196 (1st Cir. 1995). Finally, Rule 51 of the Federal Rules of Civil Procedure states, "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Fed. R. Civ. P. 51.

At the close of Vanderhurst's case, the College orally moved for judgment as a matter of law on the First Amendment claim, stating simply, "we believe that there has been insufficient evidence to show that Dr. Vanderhurst was terminated for the exercise of any First Amendment protected rights . . . ." The College thus rested its initial Rule 50 motion upon the broad contention that Vanderhurst's speech was not protected under the First Amendment. After extensively

-15-

discussing whether Vanderhurst's speech was constitutionally protected, the district court denied the motion, concluding that sufficient factual disputes existed about the controversial speech which the jury needed to resolve before the court could issue a legal ruling. At that time, however, the district court addressed the First Amendment claim within the analytical framework of *Pickering v. Board of Educ.*, 391 U.S. 563 (1968) and *Connick v. Myers*, 461 U.S. 138 (1983) and not under the *Kuhlmeier* and *Miles* approach.[3] The College was also then operating under the belief that *Connick/Pickering*, rather than *Kuhlmeier* and *Miles*, provided the appropriate analytical framework for the First Amendment claim.[4] Indeed, the College's pretrial motions, which argued within a

---

[3] The *Connick/Pickering* analysis requires the court to determine if the speech was protected first by ascertaining whether the speech touched upon a matter of public concern, and second, by balancing the public employer's interests in controlling its work environment and fulfilling public responsibilities against the employee's interest in the speech. *See Pickering v. Board of Educ.*, 391 U.S. 563, 574 (1968); *Connick v. Myers*, 461 U.S. 138, 146, 150-54 (1983).

[4] For example, in its summary judgment motion, the College argued exclusively within the context of *Connick/Pickering*. Although that motion did discuss *Miles*, but not *Kuhlmeier*, it did so only for the proposition that the College had substantial interests as recognized by *Miles*, which should weigh in its favor under a *Connick/Pickering* balancing. There is nothing in the record to indicate that between filing that summary judgment motion and making its initial Rule 50 motion, the College ever attempted to shift the court's analytical focus away from *Connick/Pickering* and onto *Kuhlmeier*.

Interestingly, Vanderhurst's motion in opposition to the College's summary judgment motion did argue within the framework of *Kuhlmeier* and *Miles*. It does not appear, however, that the College or the district court ever picked up on this suggested approach prior to the time the College filed its "trial brief," the day after it made its initial Rule 50 motion.

*Connick/Pickering* analysis, likely induced the district court to adopt just such an approach. Due to the College's position when it made that initial Rule 50 motion regarding the proper analytical framework, it did not argue then that the district court should decide as a matter of law that Vanderhurst's termination reasonably related to the College's legitimate pedagogical interests.

The following day, the College filed a "trial brief," which finally urged the district court to analyze Vanderhurst's First Amendment claim under the analytical rubric of *Kuhlmeier* and *Miles* rather than under the framework set out in *Pickering* and its progeny. After advocating such an analytical approach, the College's brief stated, "Defendants have demonstrated in evidence adduced during Plaintiff's case-in-chief that his classroom comments implicated the three pedagogical interests outlined in *Miles*." The College did not argue in that brief that it would be improper for the jury to resolve the issue of whether the termination reasonably related to the College's legitimate pedagogical concerns, nor did it even request that the district court answer this question as a matter of law. Indeed, nowhere in the trial brief did the College either refer to Rule 50 or request any form of relief. Rather, it seems that the College's intent in filing the brief was merely to refocus the trial court on what the College now considered the proper mode of analysis for Vanderhurst's First Amendment claim, i.e., the analytical structure set out in *Kuhlmeier* and *Miles*.

After the close of all the evidence, the district court held a jury instruction conference. During the conference, the district court stated that the proper analysis required answering two questions: "whether there are shown to be legitimate pedagogical interests, and secondly, whether the actions taken by the school are reasonably related to legitimate pedagogical interests." The court then declared that the first inquiry presented a question of law, which it answered in the affirmative. The court stated that it would submit the second question to the jury. The district court then continued this discussion, stating, "And if I determined that [the] defendants' pedagogical interests in this case stated as a basis for the termination are legitimate, that's no longer a factor for the jury to consider here. What they're considering is the reasonableness of the action in termination." The College simply responded, "Okay."[5] After further discussion

---

[5] This colloquy reveals the litigants' misunderstanding of the question whether the termination reasonably related to legitimate pedagogical interests. That question does not ask whether the specific adverse employment action taken, here, termination, was a reasonable one in light of the teacher's alleged transgression. That decision is left to the institution itself, and a federal court should play no role in judging the reasonableness of the sanctions which a school levies against its employees. *See Miles*, 944 F.2d at 779 ("[W]e will not interfere with the authority of the school officials to select among alternate forms of discipline."). Rather, an adverse employment action reasonably relates to a school's legitimate pedagogical interests if the employee's conduct prompting the sanction, as perceived in good faith by the school, in some way violated or vitiated those legitimate pedagogical concerns. In this case, therefore, the question is whether the speech that the College in good faith believed Vanderhurst uttered violated the College's sexual harassment policy or code of ethics, which embodied legitimate pedagogical concerns. Regardless of this

about other aspects of the relevant jury instruction, the district court read the finalized version, to which the College responded, "That's fine, your Honor." Significantly, at no time before, during, or after this conference did the College object to the submission to the jury of the question whether the termination reasonably related to legitimate pedagogical concerns or even state that it viewed this as a legal inquiry. Quite to the contrary, the College's own statements during this colloquy reveal that the College, like the district court, viewed the question as one for the jury.

Finally, after the jury instruction conference ended, the College renewed its Rule 50 motion, merely stating, "On the [First Amendment] claim we would incorporate the reasoning in *Miles*, in *Bishop v. Aronov*, and also in . . . *Edwards v. California University of Pennsylvania* . . . ." The College articulated no specific arguments to support its renewed Rule 50 motion. The district court then denied the motion, to which the College responded, "I would just like to reserve that issue as to the submission of the academic freedom First Amendment claim . . . ." Again, the College failed to state any specific reasons for objecting to the submission of the First Amendment claim to the jury.

---

apparent misunderstanding, the College's response to the court's discussion does demonstrate that the College viewed the question as one properly within the province of the jury.

-19-

This record reveals that the College never argued before the district court, as it does now on appeal, that the question whether the termination reasonably related to legitimate pedagogical interests is not a question for the jury, but instead a question of law for the court. The College had ample opportunity to make the court aware of its opposition to submitting this question to the jury. Nevertheless, in its motion for summary judgment, in its initial Rule 50 motion, in the trial brief, during the jury instruction conference, and in its renewed motion, it failed to do so. Not only did the College fail to object to the submission of this question to the jury, during the instruction conference the College explicitly agreed with the district court that the question belonged to the jury. Pursuant to Rule 51, the College's failure to object to the giving of this instruction renders fatal its argument that the submission of this question to the jury warrants reversal of the judgment. *See* Fed. R. Civ. P. 51. Because the College never objected to the submission of this question to the jury or stated that the question required a legal determination by the court, this court concludes that the College waived its appellate argument that the submission of this question to the jury warrants reversal of the judgment.[6]

---

[6] The College contends that, despite its failure to object to the instruction, *Poindexter v. Atchison, Topeka and Santa Fe Railway Co.*, 168 F.3d 1228, 1232 (10th Cir. 1999) requires this court to reverse the judgment because the giving of a legal question to the jury constitutes plain error. We disagree. Unlike the instruction in *Poindexter*, the question of whether Vanderhurst's termination

Having reviewed the entire record surrounding the College's Rule 50 motions and having concluded that the College never argued against submitting to the jury the question whether Vanderhurst's termination reasonably related to the College's legitimate pedagogical interests, this court is uncertain as to the specific grounds upon which the College did base those motions, particularly the renewed motion. The initial Rule 50 motion was predicated upon the argument that under a *Pickering* analysis, the speech for which Vanderhurst was terminated was not constitutionally protected. In making its renewed Rule 50 motion, the College merely offered an entirely vague reference to *Miles* without articulating any specific argument to support its motion. The College's nebulous presentation could not have alerted the district court that the reasonable relationship issue was being tendered for its review. This court therefore concludes that the College also waived for appellate review the argument that the district court should have

reasonably related to legitimate pedagogical interests, though perhaps itself a legal one, does implicate factual findings. Before a court can answer the question, a jury must first make findings regarding the relevant speech. *See supra* note 5. *Poindexter*, therefore, is not controlling here. Furthermore, in the instant case the jury made no such findings, in part because the College failed to argue that the question was a legal one and request that the jury make the relevant predicate findings. Both because we lack those findings and the College did not include the entire trial transcript in the record on appeal, this court cannot conclude that the giving of the instruction "seriously affected the fairness, integrity or public reputation of judicial proceedings." *Aspen Highlands Skiing Corp. v. Aspen Skiing Co.*, 738 F.2d 1509, 1516 (10th Cir. 1984) (quotation omitted). As a consequence, there is no plain error.

-21-

granted its renewed Rule 50 motion because Vanderhurst's termination reasonably related to the College's legitimate pedagogical concerns.

Because the College waived for appellate review its arguments challenging the judgment on Vanderhurst's First Amendment claim, we must affirm that judgment.

C. The Contract Claim

This court will not "undertake to decide issues that do not affect the outcome of a dispute." *Griffin v. Davies*, 929 F.2d 550, 554 (10th Cir. 1991). Although Vanderhurst prevailed on both his First Amendment and contract claims and the jury found he had sustained $557,100 in damages on each claim, the parties stipulated that he could only recover once. Reflecting that stipulation, the district court's judgment awarded Vanderhurst damages of only $557,100. That award remains intact because we affirm the judgment on the First Amendment claim. This court thus need not address the appeal on the contract claim, and we decline to do so.[7]

_____

[7] This court generally avoids reaching constitutional issues when it can resolve an appeal on other grounds. *See United States v. Gonzales*, 150 F.3d 1246, 1254 (10th Cir. 1998). In the instant case, however, the district court ordered that Vanderhurst receive attorney's fees for his First Amendment claim upon filing an appropriate motion. At oral argument, both parties agreed that Colorado law would not similarly allow Vanderhurst to recover attorney's fees for his contract claim. To avoid affecting the district court's order pertaining to

IV. CONCLUSION

Because the College failed to articulate before the district court those arguments which it now presents on the First Amendment claim, this court **AFFIRMS** the judgment on that claim. In light of the structure of the district court's final judgment, we decline to address the merits of the College's argument on the contract claim. Thus, the judgment entered by the United States District Court for the District of Colorado is hereby **AFFIRMED**.

REAVLEY, J., concurs in the result only.

---

attorney's fees, this court therefore needed to resolve the College's challenge to the First Amendment claim rather than to the contract claim.