**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 11 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MICHAEL FOUNDATION, INC., a
foreign corporation,

       Plaintiff - Appellee,

  v.

URANTIA FOUNDATION, an Illinois
Charitable Trust,

       Defendant - Third-Party
       Plaintiff - Appellant,

  v.

HARRY MCMULLAN, III,

       Third-Party Defendant -
       Appellee.

No. 01-6347 and 01-6348
(D. Ct. No. CIV-00-885-W)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, Chief Circuit Judge, **ALDISERT**,[**] and **McWILLIAMS**, Senior
Circuit Judges.

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]The Honorable Ruggero J. Aldisert, Senior Circuit Judge, United States
Court of Appeals for the Third Circuit, sitting by designation.

Declaratory judgment defendant, third-party and counterclaim plaintiff Urantia Foundation appeals the district court's denial of its renewed motion for judgment as a matter of law and its alternative motion for a new trial. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

Urantia Foundation is a charitable trust formed under Illinois law. Michael Foundation is a non-profit corporation organized under Oklahoma law. This appeal arises out of the parties' dispute as to the present validity of Urantia Foundation's copyright in *The Urantia Book*, a document comprising the scriptural basis for the Urantia movement. The history of the composition of *The Urantia Book*, or such of that history as is available, bears directly upon the resolution of this case.

In approximately 1900, an unknown patient ("the Conduit") sought psychiatric help from Dr. William Sadler.[1] The Conduit behaved strangely in his sleep, and during sessions with the Conduit, Dr. Sadler became convinced that the

---

[1] No one knows who the Conduit was, but the parties agree that he composed the text of *The Urantia Book*. Throughout its briefs, Urantia Foundation refers to him as "the subject"; Michael Foundation refers to him as "Writer." Given that the terms the parties have selected to refer to the composer of *The Urantia Book* carry overtones suggestive of the principles of copyright law underlying this case, and that his status as a conduit for celestial revelation is not in dispute, we refer to him by what we hope to be a copyright-neutral term.

Conduit was channeling "celestial personalities." At some point, the Conduit began presenting Dr. Sadler with handwritten "papers," purportedly consisting of the fruits of his communion with these celestial beings. Sometime later in the course of his treatment, Dr. Sadler opened up his sessions with the Conduit to a group of relatives that referred to itself as "The Contact Commission." During its sessions with the Conduit, the Contact Commission prepared stenographic notes of the Conduit's celestial dialogs, but it destroyed most of them. The notes formed no part of *The Urantia Book*.

In 1924, after approximately twenty years of treatment and generating "papers," the Conduit announced that he would compose *The Urantia Book*. He solicited questions from the Contact Commission to present to the celestial beings during his psychiatric sessions. Dr. Sadler formed a subgroup of the Contact Commission ("the Forum") to prepare these questions. Between 1935 and 1942, in response to these questions, the Conduit delivered a foreword and 196 handwritten "papers" that together constitute *The Urantia Book*. The Contact Commission reviewed the papers and typed them. It did not change their arrangement or edit them in any way other than to correct spelling and capitalization errors. It also destroyed all documents related to the questions presented to the Conduit. The Conduit was never compensated for his efforts in creating *The Urantia Book*.

In 1950, Urantia Foundation was formed in Illinois as a charitable trust. In 1955, the Conduit permitted *The Urantia Book* to be published, and later the same year Urantia Foundation published *The Urantia Book* under notice of copyright. Urantia Foundation registered its copyright in 1956 and currently holds the original and the 1983 renewal certificates as *The Urantia Book*'s "author." In 1999, Michael Foundation, a non-profit corporation chaired by third-party defendant and appellee Harry McMullan III, himself a disaffected former adherent of the Urantia movement, published *Jesus—A New Revelation*, which reprints verbatim seventy-six of the 196 papers constituting *The Urantia Book*.

This litigation commenced when Michael Foundation and McMullan filed a declaratory judgment action seeking a declaration that Urantia Foundation's copyright in *The Urantia Book* was invalid or, in the alternative, that their book did not infringe upon Urantia Foundation's copyright. Urantia Foundation asserted numerous counterclaims against Michael Foundation and third party claims against McMullan; it moved for summary judgment as to, *inter alia*, the validity of its renewal copyright in *The Urantia Book*. The district court denied its motion, and the case proceeded to trial before a jury. At the close of evidence, the parties moved for judgment as a matter of law. The district court denied all such motions, and the jury returned a verdict in favor of Michael Foundation and McMullan. Urantia Foundation renewed its motion for judgment as a matter of

law under Federal Rule of Civil Procedure 50(b); it moved in the alternative for a new trial, asserting that the district court abused its discretion in excluding certain testimony. The district court denied both motions, and Urantia Foundation brought this appeal.

## II. DISCUSSION

A.      The District Court's Denial of Urantia Foundation's Renewed Motion for Judgment as a Matter of Law

*1.      Classification of Works for Copyright Purposes*

Urantia Foundation first registered its copyright in *The Urantia Book* in 1956. The continued validity of its copyright depends upon whether it effectively renewed that copyright in 1983. Under the governing renewal provisions, as a general rule, only the author or the author's heirs could renew the copyright in a literary work at the expiration of the initial term, regardless of whether the author had conveyed those rights for the duration of the initial term. 17 U.S.C. § 304(a)(1)(C). [2] The parties agree that neither the Conduit nor his heirs renewed the copyright in *The Urantia Book*. Urantia Foundation advances two theories to support its claim that it holds valid renewal rights in *The Urantia Book* under

---

[2] While the relationship between the Conduit and the Contact Commission is defined by provisions of the 1909 Act and relevant caselaw, renewal of subsisting copyrights still in their first term as of 1978 (e.g., Urantia Foundation's copyright in *The Urantia Book*) is presently governed by section 304 of the 1976 Act, as amended. 17 U.S.C. § 304.

exceptions to the general rule: first, that *The Urantia Book* is a composite of discrete, individual works by the Conduit, rather than a unified work, and that Urantia Foundation, as proprietor of the copyright in that composite, [3] was entitled to renew the copyright in both the compilation and in the underlying works; and second, that *The Urantia Book* is a commissioned work because Urantia Foundation's predecessor in interest specially commissioned the Conduit to write *The Urantia Book*, entitling Urantia Foundation to renew its copyright as *The Urantia Book*'s "author" under a judicially created corollary to a statutory exception governing works created for hire. [4] We consider each theory in turn.

Under the governing statute, if *The Urantia Book* is classified as a unified work by a single author, then Urantia Foundation cannot currently hold a valid renewal copyright because renewal rights in such works were not assignable until they vested, and the Conduit was dead by 1983. Thus, if *The Urantia Book* is a unified work, copyright transferred by operation of law to the Conduit's heirs in 1983, and they are the only persons who could have renewed or assigned it to Urantia Foundation. Because they did not renew the copyright, if *The Urantia*

---

[3] "Proprietor" in this context refers to the entity under whose copyright the work is published; the term is distinct from *author*, which refers to the actual creator of the work.

[4] We note that these two arguments are mutually exclusive; if the Conduit was the author, as the first theory requires, then Urantia Foundation's predecessor in interest could not be the author, as the second requires.

*Book* is a unified work, it now resides in the public domain.

If, however, *The Urantia Book* is a composite work, then Urantia Foundation's renewal copyright in *The Urantia Book* is valid. Urantia Foundation is the proprietor of the copyright in *The Urantia Book* and, under the governing statute, the proprietor of a copyright in a composite work may renew its copyright in both the compilation and the individual underlying works. 17 U.S.C. § 304(a)(1)(B)(i). The district court held on summary judgment that Urantia Foundation is the proprietor of the copyright, and Michael Foundation does not challenge that holding. Thus, if *The Urantia Book* is a composite work and the Conduit is its author, Urantia Foundation owns the copyright in both the arrangement of the works in the composite and in the underlying works themselves, because the Conduit transferred his rights to Dr. Sadler, who then transferred them to Urantia Foundation in a deed of trust.

The alternative exception under which Urantia Foundation asserts the validity of its renewal copyright in *The Urantia Book* invokes the "commissioned works doctrine." Under this judicially created doctrine, the nature of the book itself is not at issue; the focus instead is upon the relationship between the Contact Commission and the Conduit and the circumstances of the work's

creation. If, under the test developed by the caselaw, [5] the Contact Commission specially commissioned *The Urantia Book* from the Conduit, then Urantia Foundation – as the Contact Commission's successor in interest – was entitled to renew its copyright in 1983 as its proprietor. 17 U.S.C. § 24 (repealed); 17 U.S.C. 304(a)(1)(B)(ii).

The facts Urantia Foundation must prove to support these alternative arguments are as follows:

*Composite work argument*:

- The Conduit composed *The Urantia Book*, then assigned his interest in it to Urantia Foundation's predecessor in interest prior to *The Urantia Book*'s publication in 1955, making Urantia Foundation the proprietor of the rights in *The Urantia Book*, *and*

- *The Urantia Book* is a *composite work*, entitling Urantia Foundation to renew its copyright in 1983 under the proprietor exception to the usual renewal provisions.

*Commissioned work argument*:

- The Contact Commission was the "author" of *The Urantia Book* because it specially commissioned the Conduit to write

_____

[5] See Part II.B.4., *infra*.

it, making *The Urantia Book* a *commissioned work* under a judicially created doctrine parallel to the work for hire provisions of the 1909 Act, *and*

- Urantia Foundation, as the Contact Commission's predecessor in interest, qualifies as the Conduit's employer, entitling it to renew *The Urantia Book* as a work for hire in 1983.[6]

Urantia Foundation secured a jury instruction in its favor as to the first proposition (i.e., that it is the proprietor of the copyright in *The Urantia Book*). The district court submitted the remaining three propositions to the jury, which found against Urantia Foundation in each case.

*2. Standard of Review*

Urantia Foundation argues, as a preliminary matter, that the question of initial classification of works for copyright purposes is a question of law for the court and that the district court therefore erred when it submitted the question to the jury. Had Urantia Foundation preserved this argument for appeal, and were the classification question actually settled in its favor, Urantia Foundation would be entitled to a de novo review on the question of whether *The Urantia Book* is a commissioned or a composite work, rather than the more deferential standard appropriate to review of a district court's denial of a renewed motion for

---

[6] We borrow here from Appellee's chart of these issues.

- 9 -

judgment as a matter of law. Urantia Foundation has, however, waived any such argument, and we therefore need not reach the unsettled question of whether initial classification of works is, in all cases, a question of law for the court.

In the district court, Urantia Foundation's attorneys drafted proposed jury instructions and participated in a conference at which the parties agreed with the court upon—or preserved objections to—the jury instructions. They were present when the district court read the instructions to the jury. At none of these points did Urantia Foundation object to the submission of the classification question to the jury. The portion of the transcript of the instructions conference relevant to "Instruction Number 23, Work for Hire/Commissioned Work" suggests just the opposite; Urantia Foundation's counsel clearly contemplated submission of the question to the jury. The same is true of portion of the transcript relevant to "Instruction Number 26, Composite Definition."

Urantia Foundation's oral Rule 50(a) motion at the close of evidence for judgment as a matter of law did not mention the issue.[7] We find Urantia Foundation's only allusion to this argument below in its brief in support of its Rule 50(b) renewed motion: a single, undeveloped sentence in the brief reads, "Whether *The Urantia Book* is a commissioned work is a question of law subject

---

[7] In fact, in the course of his oral motion, Urantia Foundation's attorney stated, "As to the unified nature of the work, I think there's certainly a fact issue for the jury to decide on that at a minimum."

to de novo review." This sentence serves—confusingly—as the topic sentence of a paragraph attacking the sufficiency of the evidence submitted to the jury, not the propriety of submitting the question to the jury in the first place. Neither Michael Foundation nor the district court appear to have responded to this sentence, or, indeed, to have in any way discerned the question-of-law argument.

We have consistently held that a movant's renewed motion under Rule 50(b) may not advance new legal arguments; i.e., the renewed motion's scope is restricted to issues developed in the initial motion. Our decision in *Vanderhurst v. Colorado Mountain College District*, 208 F.3d 908 (10th Cir. 2000), is instructive. In that case, following a jury trial at which the movant did not object to the submission of an issue to the jury, the movant sought on appeal to argue that the issue was properly one of law for the court alone. We declined to consider the argument, and stated that

> This court generally will not entertain arguments on appeal which the appellant failed to raise before the district court. More specifically, "[a Rule 50] motion for judgment as a matter of law made at the close of all the evidence preserves for review only those grounds specified at the time, and no others." Finally, Rule 51 of the Federal Rules of Civil Procedure states, "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection."

*Id.* at 915 (citations omitted).

Given its failure to raise the argument at trial, Urantia Foundation's lengthy

briefing of the issue on appeal is unavailing. Urantia Foundation participated below in all phases of a jury trial and never objected to the submission of the classification question to the jury. It may not at this late date attempt to avoid the deferential standard appropriate to our review of a district court's denial of a jnov motion.

The standard of review for denial of a renewed motion for judgment as a matter of law in a jury trial contesting the validity of a copyright is clear:

> We review the district court's denial of a renewal motion for judgment as a matter of law de novo, applying the same standards as the district court. We must affirm if, viewing the record in the light most favorable to [the nonmoving party], there is evidence upon which the jury could properly return a verdict for [the nonmoving party]. We do not weigh the evidence, pass on the credibility of the witnesses, or substitute our conclusions for that [sic] of the jury. However, we must enter judgment as a matter of law in favor of the moving party if "there is no legally sufficient evidentiary basis . . . with respect to a claim or defense . . . under the controlling law."

*Harolds Stores, Inc. v. Dillard Department Stores, Inc.*, 82 F.3d 1553, 1546-47 (10th Cir. 1996) (citations omitted).

### 3. *Composite Work*

We proceed, under the standard articulated *supra*, to consider whether the record contains evidence upon which a reasonable jury could have concluded that *The Urantia Book* is not a composite work. Any such evidence terminates our inquiry in favor of Michael Foundation, the non-moving party.

The term "composite work" appears in, but is not defined by, the 1909 Act.

- 12 -

Composites are related, however, to "compilations," which the Act does define. Compilations are works "formed by the collection and assembling of pre-existing materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. The leading treatise on copyright law defines the composite category as a subcategory of compilations, but distinct from compilations in that each individual work within a composite must be independently copyrightable, whereas there is no such requirement for a compilation. *Nimmer on Copyright, § 3.02.* Individual works in a compilation need not come from the same author, as long as they are discrete, independent works. Examples of compilations include periodicals, catalogs, and encyclopedias. Under both the 1909 Act and the 1976 Act, the proprietor of a "periodical, cyclopedic, or other composite work" is entitled to renew the copyright it originally obtained in the work. 17 U.S.C. § 24 (repealed); 17 U.S.C. § 304(a)(1)(B)(i).

Urantia Foundation advances four arguments in support of its contention that *The Urantia Book* is a composite work as a matter of law: (1) *The Urantia Book* is a composite work per se because it is a collection of 196 separate, individually titled papers on a wide variety of topics, most of which the Conduit

- 13 -

wrote and delivered separately to the Contact Commission; [8] (2) because the question of whether *The Urantia Book* is a composite work is one of law for the court and *The Urantia Book* was in evidence, this court should disregard the jury's verdict, examine the 2097 pages of *The Urantia Book* itself, and hold as a matter of law that it is a composite work; (3) if the question of whether *The Urantia Book* is a composite work was properly one of fact for the jury, McMullan's testimony should not determine the outcome because he was an accused infringer; and (4) the district court improperly instructed the jury that, when the works of a single author are collected together, the intent of the author determines whether a composite or a unified work results.

In response to the first assertion, Michael Foundation argues that the evidence indicates that *The Urantia Book* is, in fact, a unified literary work by a single author and not a compilation of works selected and arranged by a third party. [9] For example, the jury heard evidence that the Contact Commission did not

---

[8] In support of this argument, Urantia Foundation cites *Urantia Foundation v. Maaherra*, 114 F.3d 955 (9th Cir. 1997), and argues that this court should, in the interests of "principled and intelligible" development of copyright law, follow the Ninth Circuit's lead and hold that *The Urantia Book* is a composite work. We note, however, that the *Maaherra* court's focus was not on the specific question of whether *The Urantia Book* was or was not a composite work; rather, it was on whether Urantia Foundation's erroneous description of itself as the "owner of a work for hire" rather than the "proprietor of a composite work" on its 1983 renewal certificate automatically invalidated the renewal.

[9] While composite works typically contain works by multiple authors, we

(continued...)

select or arrange the papers that comprise *The Urantia Book*, but published them precisely as the Conduit presented them. The Conduit also announced, before writing the papers that eventually became *The Urantia Book*, that he would create a book, not a series of separate papers. The jury also heard evidence that, while the individual papers bear separate titles, they are not distinct, unrelated works but chapters of *The Urantia Book*, which the Conduit intended to constitute a unified work. Such evidence satisfies the deferential standard of review applicable to this argument.

We addressed Urantia Foundation's second argument in our discussion of the appropriate standard of review and need not repeat that discussion here. We disagree with Urantia Foundation's third proposition. Its contention that the testimony of McMullan—the person it has sued for infringement—may not be allowed to "determine" the outcome of this case is without merit. The jury was free to consider McMullan's testimony and give it whatever weight it found appropriate; that is the jury's function. Moreover, the jury heard a great deal of testimony, and there is no reason to believe that McMullan's testimony "determined" the outcome. Finally, Urantia Foundation objected to none of the

---

[9](...continued)
need not reach the parties' debate over whether a work by a single author can be a composite work. The record need only contain evidence sufficient to permit a rational jury to have found that *The Urantia Book* was not a composite work; and, as it does, our inquiry is complete.

testimony below; thus, if there is an argument to be made here Urantia Foundation has waived it. Fed. R. Evid. 103(a)(1).

Finally, Urantia Foundation argues that the district court improperly instructed the jury that where a single author's works are compiled, that author's intent determines whether the work is unified or a composite. [10] Urantia Foundation properly preserved this objection below, though it failed to provide this court with a citation to the portion of the record containing its objection. An erroneous jury instruction mandates reversal: (1) if we have "substantial doubt whether the instructions, considered as a whole, properly guided the jury in its deliberations," *Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.*, 175 F.3d 1221, 1235 (10th Cir. 1999) (quotation omitted); or (2) "when a deficient jury instruction is prejudicial," i.e., where the jury might have based its verdict on the allegedly defective instruction. *Coleman v. B-G Maint. Mgmt. of Colo., Inc*, 108 F.3d 1199, 1202 (10th Cir. 1997). [11]

---

[10] Urantia Foundation also argues that the composite definition instruction was "imbalanced." Urantia Foundation claims to have raised this objection below, but provides no supporting citation to the record. Even if properly preserved, however, we decline to consider this argument, as Urantia Foundation raises the issue outside of its enumerated issues on appeal and relegates discussion of it to a footnote late in the brief. *United Transp. Union v. Dole*, 797 F.2d 823, 827 (10th Cir. 1986) (failure to develop arguments thoroughly in a brief generally waives the argument).

[11] Urantia Foundation does not request reversal; rather, it incorporates its challenge to the jury instruction into its argument that initial classification is a

(continued...)

It is not clear whether an author's intent determines the classification of a book comprised exclusively of his own work. The statute and the caselaw are silent on the question. Michael Foundation argues—by analogy to the settled distinction between joint works and collective works, which *is* based upon authorial intent—that intent is, or at least should be, the controlling factor. [12] Because the question appears to be unsettled, we cannot, without settling the question ourselves, say that the district court's articulation of the standard in its

---

[11](...continued)
matter of law for the court. Because we disagree with Urantia Foundation on the classification question, we consider its challenge in the usual manner, i.e., as a request for a reversal.

[12] In support of its assertion that authorial intent governs, Michael Foundation cites (1) the statute, 17 U.S.C. § 101 (defining "joint work" as one "prepared by two or more authors with the *intention* that their contributions be merged into inseparable or interdependent parts of a unitary whole"); (2) legislative history, H.R. Rep. No. 1476, 94th Cong., 2d Sess. 120 (1976) ("The touchstone [for distinguishing between joint works and collective works] is the *intention*, at the time the writing is done, that the parts be absorbed or combined into an integrated unit . . . ."); and (3) *Nimmer on Copyright § 6.05* ("What distinguishes a collective work from a joint work based upon interdependent parts? The distinction lies in the *intent* of each author at the time his contribution is written.") (emphases added). Michael Foundation insists that this question is logically solved by analogy to the settled distinction between joint and collective works—i.e., that it would be "perverse to allow two authors to decide for themselves whether their separate contributions were merged into a [unified] work . . . but deny a single author the right to make that decision." While we appreciate the logical appeal of this analogy, no court has so held; and as sufficient evidence supports the jury's conclusion that *The Urantia Book* is not a composite, we need not reach the question.

- 17 -

jury instruction is erroneous. [13] We need not reach this question, because even if the instruction overstated the importance of authorial intent, we find no grounds therein for reversal. "We review jury instructions de novo, and must view the instructions in their entirety, deciding not whether the instruction was completely faultless, but whether the jury was misled in any way. Thus, '[w]here a jury instruction is legally erroneous, we must reverse if the jury might have *based its verdict* on the erroneously given instruction." *Coleman*, 108 F.3d at 1202 (citation omitted) (emphasis added). We have reviewed the jury instructions in their entirety and find that, taken as a whole, they properly guided the jury. *Id.; Morrison Knudsen*, 175 F.3d at 1235. Especially in light of (1) the fact that the Conduit, being dead, did not testify as to his intentions, leaving the details of those intentions part of the murky history of the composition of *The Urantia Book*, and (2) the fact that the book itself was, as Urantia Foundation points out,

---

[13] The language to which Urantia Foundation objects is as follows:
Keep in mind that where the works of only one author are involved, the intent of the author is controlling. If the subject authored separate and independent works, each of which was intended to exist on a stand alone basis, and if the Urantia Foundation or its predecessors then assembled those independent works in an order of its own choosing into one collective work that it published as The Urantia Book, then The Urantia Book can be a composite work. By contrast, if the subject intended to author related pieces at different times which the Urantia Foundation or its predecessor published wholesale as The Urantia Book, then The Urantia Book cannot be a composite work.

in evidence, we see no reason whatsoever to believe that the jury *based its verdict* on the possibly erroneous instruction. *See Coleman*, 108 F.3d at 1202.

The dispositive fact is, simply, that ample evidence was presented to the jury to support its determination that *The Urantia Book* is not a composite work. Viewing the evidence in the record, as we must, in the light most favorable to Michael Foundation, we hold that the district court properly denied Urantia Foundation's renewed motion for judgment as a matter of law.

*4. Commissioned Work*

Urantia Foundation alternatively argues that *The Urantia Book* is a commissioned work. If this is so, Urantia Foundation's 1983 renewal as proprietor of the copyright is valid. The 1909 Act did not contemplate "commissioned works." The Act did provide that "in the case of . . . any work copyrighted by . . . an *employer* for whom such work is made for hire, the proprietor of such copyright shall be entitled to a renewal and extension of the copyright in such work." 17 U.S.C. § 24 (repealed); 17 U.S.C. § 304(a)(1)(B)(ii) (emphasis added). Urantia Foundation does not argue that a traditional employment relationship existed between the Contact Commission and the Conduit; rather, it argues that the Contact Commission specially commissioned *The Urantia Book* from the Conduit.

The commissioned works doctrine began as a judicially created stopgap,

applying the 1909 Act's provisions regarding works created for hire in traditional employer-employee relationships to those created on commission in independent contractor relationships. While the 1976 Act codifies this judicially created doctrine, 17 U.S.C. § 101, the 1909 Act applies to the relationship at issue in this case. Thus, in order to prove a commissioning relationship existed such that Urantia Foundation's 1983 renewal was valid, Urantia Foundation must satisfy the test developed by the relevant caselaw. [14]

Aside from its question-of-law argument, which we have discussed and rejected *supra*,[15] Urantia Foundation advances three main arguments in support of its contention that the district court erred when it refused to hold as a matter of law that the Contact Commission specially commissioned *The Urantia Book* from the Conduit. We address first Urantia Foundation's belated argument that "the district court's order is . . . based on the erroneous premise that a commissioning party must establish that it had the right to control the content of a work in order for the work to qualify as a commissioned work." Urantia Foundation neglects to mention that it drafted the language upon which the district court relied. For

---

[14] As our discussion *infra* indicates, the parties disagree as to precisely what that test is. Urantia Foundation argues that the test includes only "instance" and "expense" prongs, while Michael Foundation argues that an additional prong requires that the commissioning party have the right to control the content of the work itself.

[15] See Part II.A.2. *supra*.

obvious reasons, Urantia Foundation did not object to the instruction below; it has consequentially waived the argument on appeal. Urantia Foundation's disingenuous challenge to its own jury instruction is without merit.

Urantia Foundation next argues that the evidence presented to the jury mandates judgment as a matter of law as to the existence of a commissioning relationship under the "instance and expense" test. We need not resolve the parties' dispute as to whether the proper test includes factors beyond instance and expense. Even under the two-prong test Urantia Foundation urges us to adopt, Urantia Foundation's argument is without merit. Urantia Foundation argues that the "instance" prong is met because the Contact Commission, its predecessor in interest, "solicited, formulated, selected, and submitted questions" to the Conduit and "supervised hundreds of sessions with" the Conduit. The Urantia Papers arose, however, out of the Conduit's psychiatric sessions with Dr. Sadler. The sessions occurred at the Conduit's instance, not Dr. Sadler's. As Michael Foundation correctly points out, in the doctor-patient relationship, the doctor is the patient's fiduciary, not the other way around. Furthermore, the Conduit began writing the Urantia Papers on his own initiative, and "announced to the contact group the plan to initiate the *Urantia Papers*" after having delivered papers of

celestial origin to Dr. Sadler for twenty years.[16] The Conduit himself requested the questions from the Contact Commission. The Supreme Court has indicated that the test for whether a work is commissioned applies "at the time the commission is accepted." *Community for Creative Care Non-Violence v. Reid*, 490 U.S. 730, 741 (1989) (discussing general principles of agency law while construing section 101 of the 1976 Act). Upon review of the record, we agree that the Contact Commission's role in creating *The Urantia Book* was "little more than a reaction to an already ongoing process of creation."[17]

Urantia Foundation argues that the "expense" prong is met because of costs incurred in providing stenographic materials, typing the Conduit's handwritten manuscripts, correcting spelling and capitalization errors, and financing the later publication of *The Urantia Book*. But the Conduit produced the papers that comprise *The Urantia Book* alone, in longhand, and one witness testified that the Contact Commission received the information at the Conduit's home. Michael Foundation argues that, "[d]istilled to its essence, Urantia Foundation's argument is that because it acted as publisher of the work and defrayed all expenses in that

---

[16] The Conduit announced these plans on behalf of, or "as," Machiventa Melchizedek, one of the celestial personalities constituting the "Revelatory Commission," to whom Urantia Foundation ultimately attributes the revelations it believes *The Urantia Book* to embody.

[17] The cases upon which Urantia Foundation relies fail to support its contention that supplying questions to the creator satisfies the "instance" test.

capacity, the work itself is transmogrified *ex ante* into something produced on commission." We agree that such a view would render most published works "commissioned."

Finally, Urantia Foundation argues that (1) its 1983 renewal certificate, which lists *The Urantia Book* as a "work for hire" and Urantia Foundation as "author," creates a rebuttable presumption that *The Urantia Book* is a commissioned work, and (2) Michael Foundation failed to rebut the presumption.[18] For several reasons, we disagree. First, as we noted above, the "specially commissioned work" doctrine is a creation of courts extending the 1909 Act's "work for hire" provisions to independent contractor relationships. Because federal courts did not apply the work for hire doctrine to commissioned works until after 1965, Urantia Foundation cannot have claimed the work as a commissioned work when it filed its original certificate in 1956. *See Reid*, 490 U.S. at 749 (citation omitted). The certificate cannot be prima facie evidence of a relationship embodied in a common law doctrine not yet created by the courts. Second, the jury's determination, supported by ample evidence, that no

_____

[18] A filed copyright certificate "shall be admitted in any court as prima facie evidence of the facts stated therein." 17 U.S.C. § 209 (repealed). This presumption is rebuttable with evidence showing affirmatively that the copyright is invalid. *Academy of Motion Picture Arts and Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1451 (9th Cir. 1991).

commissioning relationship existed, does rebut the presumption. [19]

In short, under the appropriately deferential standard of review, there is ample evidence in the record to support the jury's determination that no commissioning relationship existed between the Conduit and the Contact Commission. The district court, therefore, did not commit reversible error when it denied Urantia Foundation's renewed motion for judgment as a matter of law on the question of whether its predecessor in interest commissioned the Conduit to create *The Urantia Book*.

B. Exclusion of Barbara Newsom's Testimony on Grounds of Unfair Surprise

Urantia Foundation moved below for a new trial based upon the district court's exclusion of Barbara Newsom's testimony on grounds of unfair surprise. The district court denied the motion, and Urantia Foundation on appeal asserts

---

[19] Michael Foundation argues that Urantia Foundation has waived this particular formulation of the issue by failing to request a jury instruction as to the rebuttable presumption argument. We agree that, to the extent that a specific instruction as to the presumption of validity would have induced the jury to require *more* evidence than it otherwise would have before finding that the Conduit did not write *The Urantia Book* under commission from the Contact Commission, Urantia Foundation has obviously waived the issue. We need not reach the details of Michael Foundation's waiver argument, however, as the presumption was amply rebutted by: (1) the logical impossibility of the certificate creating a presumption in favor of a relationship not recognized by the law when the certificate was recorded; and (2) more importantly, the jury's finding, supported by adequate evidence, that no commissioning relationship existed.

- 24 -

that this was error requiring us to remand the case to the district court for a new trial. We review the denial of a motion for a new trial for a manifest abuse of discretion. *Aguinaga v. United Food & Commercial Workers Int'l Union*, 993 F.2d 1463 (10th Cir. 1993), *cert. denied*, 510 U.S. 1072 (1994).

Urantia Foundation proffered testimony from Newsom that the Conduit "was aware of the Urantia Papers, knew of the Contact Commission's intent to publish them, and disclaimed any copyright in the papers." Newsom's testimony would have been based upon secret journals purportedly prepared by Dr. Sadler and kept in a locked file cabinet until their unexplained disappearance in 1979. Newsom would have testified that she examined the journals twenty years earlier while researching a history that she was writing about the Urantia movement. The district court excluded the evidence on the ground that it would unfairly surprise Michael Foundation. Michael Foundation contends that the admission of the secret journals would have been prejudicial to it because the Joint Pre-trial Report did not adequately prepare it for the testimony, which Urantia Foundation offered four and one-half days into trial, after Michael Foundation had rested.

We agree. Urantia Foundation's contention that Michael Foundation would not have been unfairly surprised seems disingenuous, given that Urantia Foundation's own counsel claimed ignorance of Newsom's potential testimony as to the purported secret journals until the Friday night before the Monday morning

on which Urantia Foundation offered her testimony.  Urantia Foundation points to the Final Joint Pre-trial Report, which indicated that Newsom would testify "as to the matter in which 'The 50 Years' anniversary document was prepared, matters relating to the origin of *The Urantia Book*."  Urantia Foundation asserted that this adequately prepared Michael Foundation for Newsom's testimony.  But that report was prepared before even Urantia Foundation's own counsel knew of the existence of the purported secret journals; given the particular nature of the proffered testimony, it therefore appears likely that Michael Foundation did not receive adequate notice.

Exclusion of evidence at trial is within the sound discretion of the trial court; thus "an evidentiary ruling will be reversed only on a showing that the trial court abused its discretion."  *Kloepfer v. Honda Motor Co.*, 898 F.2d 1452, 1456 (10th Cir. 1990) (citation omitted).  Newsom's testimony was announced well into the trial, after Michael Foundation had rested.  It concerned the contents of purported secret journals, purportedly kept in locked filing cabinets, until their purported mysterious disappearance over twenty years ago, and purportedly contained evidence highly injurious to Michael Foundation's case.  Suffice it to say that we do not find the district court's exclusion of Newsom's testimony to have been an abuse of its broad discretion.

### III. CONCLUSION

Viewing the evidence in the light most favorable to Michael Foundation, we find that substantial evidence supports the jury's determination that *The Urantia Book* is neither a composite nor a commissioned work. We therefore AFFIRM the district court's denial of Urantia Foundation's renewed motion for judgment as a matter of law. Because the trial court did not abuse its broad discretion in excluding, on grounds of unfair surprise, the testimony of Barbara Newsom as to the contents of purported secret journals, we AFFIRM the district court's denial of Urantia Foundation's motion for a new trial.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Chief Circuit Judge

**McWILLIAMS, Senior Circuit Judge, dissenting.**

In my view, the district court erred in denying Urantia Foundation's motion for judgment, n.o.v. I hold that the Urantia Foundation's renewal copyright is valid and enforceable as a matter of law. *See Urantia Foundation v. Maaherra*, 114 F.3d 955 (9th Cir. 1997).